Irving Greenbaum et al., Respondents, *v.* American Metal Climax, Inc., et al., Appellants, et al., Defendants.

First Department, March 21, 1967.

226

*Michael A. Cooper* of counsel (*Roger L. Waldman* with him on the brief; *Sullivan & Cromwell,* attorneys), for appellants.

*Stanley I. Schachter* of counsel (*Matalon & Schachter,* attorneys), for respondents.

EAGER, J. Certain of the defendants appeal from an order denying their motion for summary judgment. The action is brought by stockholders of a close corporation (" Eastern ") which is engaged in the business of production, sale and installation of precast architectural concrete products used in building construction. The plaintiffs, as owners of 11.8% of the common stock of Eastern, bring the action individually and derivatively to procure an injunction and an accounting with respect to alleged wrongful acts of a majority stockholder and certain officers and directors. The defendants have submitted affidavits and evidentiary data establishing the propriety and fairness of the transactions challenged in the complaint, but the plaintiffs have failed to come forward with evidence indicating merit to their alleged case. Consequently, defendants' motion should have been granted.

The complaint was drawn mainly to challenge the offering by Eastern to all of its stockholders in November, 1965 of the right to subscribe for and acquire, at the price of $300 per share, three additional shares of common stock for each share owned by them (the " rights offering "). The summary of plaintiffs' allegations are that the value of " each share of Eastern is substantially in excess of   *   *   *   the $300 price per share " and that the offering was planned as an improper device whereby defendant American Metal Climax, Inc. (" Amax "), a majority stockholder of Eastern, would augment its controlling interest in

Eastern; that the "sole purpose for the device" was to dilute the holdings of minority stockholders "inasmuch as other techniques could have been employed which would have furnished Eastern with working capital without substantially diluting the holdings of other stockholders".

The rights offering was made with due regard to the preemptive rights of all stockholders of Eastern, including plaintiffs; they were given proper and equal opportunity to subscribe for the additional shares. Certainly, the consequent dilution of the plaintiffs' interests and voting power in the corporation by reason of their failure to exercise their pre-emptive rights is not actionable. The rule is that "a stockholder cannot complain if, after having been given a chance to get his proportion of an additional issue of stock on the same terms as others interested, he is unwilling to risk more money in the venture and prefers to let the others interested take their chances on ultimate success." (*Conklin* v. *United Constr. & Supply Co.*, 166 App. Div. 284, 296, affd. 219 N. Y. 555.)

It appears beyond dispute that Eastern, at the time of the rights offering, was in dire need of additional capital funds. The means of raising the same was a matter fully within the powers and solely committed to the discretion of the majority stockholders and the directors of the corporation. The exercise of their powers and discretion in utilizing the rights offering as a method of raising needed additional capital, and the fixing of the terms thereof, may not be successfully attacked where, as here, there was due regard for the protection of the pre-emptive rights of minority stockholders. In any event, the plaintiffs have failed to come forward with any evidence tending to show that the actions of defendants were so opposed to the true interests of the corporation as to raise an inference that their actions were taken other than in the proper exercise of judgment in corporate affairs. There is no proper factual support for plaintiffs' allegations that the subscription price of $300 fixed for the purchase of shares offered to stockholders was an unfair or grossly inadequate price.

The plaintiffs point to an alleged offer in July, 1965 (not a firm offer by its terms), of a third person (not factually shown to be a ready, willing and able purchaser) to purchase the stock of Eastern at $5,000 a share. The plaintiffs contend that Amax should have investigated such offer with the view of a sale of all the capital stock of Eastern, including the stock held by Amax, to the proposed purchaser, but that "Amax was obviously not interested in selling". Of course, Amax, as a majority stockholder of Eastern, owed no duty to plaintiffs or other minority

stockholders (not stockholders of Amax) to join with them in a sale of its stock, no matter what price was offered therefor. The decision to sell or hold its stock in Eastern was a matter for Amax, its stockholders and directors, and was of no proper concern of plaintiffs.

The plaintiffs also challenge a sale by Eastern to Amax, the majority stockholder, of a majority stock interest (723 shares) held by Eastern in the Mabie-Bell Schokbeton Corporation ("Mabie-Bell"), also a precast concrete manufacturer and engaged in business in certain southern States. The summary of plaintiffs' allegations is that "[I]n the guise of aiding the refinancing of Eastern, Amax siphoned off and wasted a substantial asset of Eastern by acquiring in July and September of 1965, Eastern's majority interest in Mabie-Bell."

The Mabie-Bell shares were purchased by Eastern in May, 1964 for $508,000 and sold to Amax in July, 1965 for $549,480 ($760 a share — cash for 150 shares and an option to Amax for the remaining 573 shares), with an option to Eastern to repurchase the shares on or before March 6, 1966 at the same price for which they were sold to Amax.

Eastern's directors, acting by a majority who were unaffiliated with Amax, approved the sale as a means of alleviating Eastern's immediate need of capital funds. The option retained by Eastern was not exercised but there is no factual showing that it was in any financial position to do so, or that, under the circumstances, it was in its interest to exercise the same.

The business of Eastern was by law vested in the management of its board of directors (Business Corporation Law, § 701). Certainly, the matter of disposal of the Mabie-Bell assets (non-franchise assets) and the nonexercise of the option to repurchase the same, were matters for the business judgment of Eastern's directors. (See 19 C. J. S., Corporations, §§ 742, 743, 1038, subd. (b); 12 N. Y. Jur., Corporations, §§ 763, 764; 2 Fletcher's Cyclopedia Corporations, § 518.) There is no evidential support for the contention that the sale was at a grossly inadequate price or that Eastern's directors acted in the transaction otherwise than conscientiously and in the best interests of the corporation. There is no proof presented tending to establish that any defendant director acted in self-interest or in a dual capacity in the transaction. (See *Borden* v. *Guthrie*, 23 A D 2d 313, 319, affd. 17 N Y 2d 571.)

The plaintiffs further contend on this appeal that the rights offering and the sale of the Mabie-Bell assets violated the terms of a loan agreement between Eastern and Amax. This contention is not the gravamen of any cause of action pleaded and

apparently was not pressed at Special Term. In any event, Eastern, as a party to the loan agreement, was entitled to expressly or impliedly consent to a modification thereof in its interests and with a view of meeting the financial urgency in its affairs. Plaintiffs fail to present factual data tending to indicate that the defendants acted in bad faith in disregard or in modification of the terms of the loan agreement. Furthermore, there is no showing that a breach of the provisions of the loan agreement, if any, resulted in any damage to the plaintiffs or to Eastern. There is no factual issue raised in this connection.

Finally, the plaintiffs, in a most general and " scatter-gun " attack upon the actions of the defendants in the management of the affairs of Eastern, point to allegations in plaintiff Greenbaum's affidavit, principally conclusory in nature, alleged to constitute a prima facie showing of a fraudulent conspiracy to depreciate the assets of .Eastern and the value of its stock, including the holdings of plaintiffs. For instance, though not within the gravamen of the cause of action pleaded, Greenbaum avers that the defendants were guilty of fraud or bad faith in a change of Eastern's bookkeeping and accounting practices so as to defer profits whereby Amax, as the principal stockholder, could gain tax rebate advantages (see Internal Revenue Code, §§ 1501–1504). There is, however, no factual showing that the revised method of accounting adopted by Eastern was a change to an improper or unusual accounting practice. Of course, Amax, as the holder of the required percentage of the stock of Eastern, upon compliance with Internal Revenue Code provisions, was entitled to utilize the losses of Eastern for its tax advantage; and, in the absence of a showing of bad faith or the obtaining by Amax of an undue advantage at the expense of minority stockholders, they have no ground for complaint in this connection. (See *Case* v. *New York Cent. R. R. Co.*, 15 N Y 2d 150.)

There is the further averment that Amax was guilty of illegality and fraud in the matter of soliciting options from stockholders for sale of their stock in Eastern. The plaintiffs, however, did not option or sell their stock to Amax and may not validly complain of alleged illegality and fraud on the part of Amax in the procuring of options from other stockholders who are not complaining here. It does not appear that the plaintiffs or Eastern were damaged in any way by the alleged illegality and fraud of Amax in this connection, and there is no material factual issue in regard thereto.

The plaintiffs, as minority stockholders in this close corporation, hold their stock subject to the control and management of the corporation by the majority stockholder and the corporate

board of directors. Having only a minority interest, they cannot validly complain of the management of corporate affairs unless they have proof of fraud, negligence or bad faith on the part of those in control. " The acts of the defendant directors ' *  *  * within the powers of the corporation, in the lawful and legitimate furtherance of its purposes, in good faith and the exercise of an honest judgment, are valid and conclude the corporation and the stockholders. Questions of policy of management, expediency of contracts or action, adequacy of consideration, lawful appropriation of corporate funds to advance corporate interests, are left solely to their honest and unselfish decision, for their powers therein are without limitation and free from restraint, and the exercise of them for the common and general interests of the corporation may not be questioned although the results show that what they did was unwise or inexpedient.' (*Pollitz* v. *Wabash R. R. Co.*, 207 N. Y. 113, 124.) " (*Blaustein* v. *Pan American Petroleum & Transp. Co.*, 293 N. Y. 281, 303-304.)

In the final analysis, the question here is whether there is any inference that Amax used its power as a majority stockholder " to gain undue advantage to itself at the expense of the minority. This is the standard of responsibility of corporate officers who, in a relationship of this kind, are able to exert this kind of a corporate power as it has been laid down in many cases. A basic ground for judicial interference with corporate decisions on complaint of minority interests is an advantage obtained by the dominant group to the disadvantage of the corporation or its minority owners.  *  *  * A common thread showing undue advantage laid off against loss of advantage runs through these cases [the court having reviewed the cases] and harmonizes their holdings. There are exceptions, but in the absence of this kind of disparity the business judgement of corporate officers will not be interfered with [citing cases]." (*Case* v. *New York Cent. R. R. Co., supra*, pp. 156, 157.)

In the light of the holdings aforesaid, it is clear that the plaintiffs do not have a case. There is no factual showing, within the scope of the allegations of the complaint, that Amax in any way improperly profited in its dealings with Eastern at the expense of the latter or its stockholders. In fact, it does not appear that Eastern sustained any loss due to any of the acts complained of.

It is well known that derivative actions by stockholders generally involve extensive pretrial procedures, including lengthy examinations before trial, and then, finally, prolonged trials; and that they also entail large litigation costs, including the probability of a considerable liability upon the corporation

for the defense costs of defendant officers. Such actions are a heavy burden upon the courts and litigants. Consequently, the summary judgment remedy should be fully utilized and given due effect to challenge such an action which appears to be in the nature of a strike suit or otherwise lacks apparent merit. Where, as here, the defendants upon the motion for summary judgment, make a proper factual showing of the legality, propriety and fairness of the occurrences and transactions set up as the basis for the action, the plaintiffs must be prepared to come forward with proof that they do in fact possess a case. They are bound to bear in mind that matters depending on business judgment are not actionable. (cf. *Steinberg* v. *Carey*, 285 App. Div. 1131.) They are required to set forth something more than vague general charges of wrongdoing; their charges must be supported by factual assertions of specific wrongdoing; conclusory allegations of breaches of fiduciary duty are not enough. Where, as here, the plaintiffs fail to come forward with evidentiary data indicating merit to the cause of action as alleged, the court should not hesitate to grant defendants' motion for summary judgment. Perhaps, under the circumstances, plaintiffs' remedy was to obtain an inspection of the books and records of the corporation to ascertain if proper proofs were available to support an action; but certainly, absent such proofs, they may not rely merely upon their suspicions to defeat the motion for summary judgment.

The order, entered August 12, 1966, denying defendants' motion for summary judgment, should be reversed, on the law, with costs and disbursements of the appeal to defendants, their motion should be granted, and the complaint should be dismissed, with costs.

BOTEIN, P. J., STEVENS, STEUER and TILZER, JJ., concur.

Order entered on August 12, 1966, unanimously reversed, on the law, with $50 costs and disbursements to the appellants, and defendants' motion for summary judgment granted, with $10 costs.