**Harry LEWIS, Plaintiff,**

v.

**Samuel O. NEWMAN et al., Defendants.**

**No. 70 Civ. 5142.**

United States District Court,
S. D. New York.

May 21, 1973.

Louis Kipnis, New York City, for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants, Samuel O. Newman, J. Moe Newman, Marcel Weiss, Howard Moss, Constance Moss, Charles Silver, Arthur Singer and Max Hoffman.

Pollack & Singer, New York City, for defendant David I. Shivitz.

Demov, Morris, Levin & Shein, New York City, for defendants Philip Hausman, Alvin Hausman, Dorothea Silverberg and Hilda Rae Jeffrey as Executors of the Estate of Jacob Hausman, deceased.

Sassower & Postel, New York City, for defendant Howard Stores Corp.

## OPINION

EDWARD WEINFELD, District Judge.

This is a motion pursuant to Rule 23.1 of the Federal Rules of Civil Procedure for approval of a settlement agreement in a derivative action brought on behalf of Howard Stores Corporation against present and former directors of the corporation and the executors of the estate of a former employee.[1] The Court ordered that a hearing be held on April 9, 1973, upon appropriate notice to each Howard stockholder of record. On the return date only proponents of the settlement appeared; no stockholder appeared in opposition. Plaintiff's counsel seeks an award of $27,500 for legal services rendered and for expenses, reference to which was made in the notice sent to stockholders and which, to the extent it is granted, is payable by Howard.

## THE PLEADINGS

The complaint charges the defendants with violations of the Securities Exchange Act of 1934, section 10(b),[2] and Rule 10b–5 promulgated thereunder.[3] In substance, it alleges that defendant directors Samuel O. Newman and J. Moe Newman (the Newmans), prior to May

---

1. During the pendency of the action the former employee died; the executors were then substituted as defendants.

2. 15 U.S.C. § 78j(b).

3. The complaint does not specify a particular section of the Act, but it is obvious § 10(b) was intended.

29, 1969, were obligated under an agreement with Jacob Hausman, the former employee, to purchase from him 31,250 shares of Howard stock; that thereafter the Newmans, whose shareholdings gave them practical voting control of the corporate affairs and domination of the Board of Directors, to evade this obligation caused Howard to acquire the Hausman stock at a cost of $32 per share, or $1,000,000, payable over a five-year period; that the price was substantially higher than the true value of those shares; that there was no business justification for such purchase; that the market price of the stock was about to decline; that in furtherance of their plan to foist their obligation upon Howard, the Newmans, aided and abetted by other director defendants and Hausman, concealed the foregoing as well as other facts from some of Howard's directors in inducing the Board to approve and authorize the purchase of the Hausman shares. The complaint further alleges that Howard suffered a loss of $750,000 because of the subsequent decline in the market price of the shares and a decree is sought ordering the defendants to account to Howard for its losses and for related relief.

All the defendants deny the material allegations of the complaint and the charges of wrongdoing, and assert affirmative defenses, including that the transaction was a matter of business judgment and when entered into was fair and advantageous to the corporation.

## PRETRIAL PROCEEDINGS

Plaintiff propounded interrogatories to all the individual defendants and made requests for document production to them and to Howard, and appropriate responses were made. Plaintiff also deposed defendants Arthur Singer and David Shivitz, references to which is made hereafter. The parties also engaged in several pretrial conferences under the supervision of a magistrate. This Court is satisfied that sufficient discovery has been conducted for both the parties and the Court to evaluate the relative strengths and weaknesses of plaintiff's claims and the defenses thereto.[4]

## TERMS OF THE PROPOSED SETTLEMENT

The proposed compromise provides that the director defendants are to pay Howard $45,000, and the Hausman executors will consent to a $65,000 reduction in the balance due on the purchase of Hausman's shares. If the settlement is approved, all claims asserted or based upon allegations in the complaint will be dismissed with prejudice.

## EVALUATION OF THE SETTLEMENT

The Court's function on this motion is not to try out or attempt to decide the merits of the action.[5] Rather, the Court's responsibility is to reach "an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated" and to "form an educated estimate of the complexity, expense and likely duration of such litigation . . . and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise."[6] The test is often more concisely phrased

---

4. See Saylor v. Lindsley, 456 F.2d 896, 901 (2d Cir. 1972).

5. See In re Prudence Co., 98 F.2d 559, 560 (2d Cir. 1938), cert. denied, 306 U.S. 636, 59 S.Ct. 485, 83 L.Ed. 1037 (1939); Milstein v. Werner, 57 F.R.D. 515, 524 (S.D.N.Y.1972); Schleiff v. Chesapeake & O. Ry., 43 F.R.D. 175, 178 (S.D.N.Y. 1967).

6. Protective Comm. v. Anderson, 390 U.S. 414, 424–425, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968). Accord, Newman v. Stein, 464 F.2d 689, 692 (2d Cir.), cert. denied, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972); Saylor v. Lindsley, 456 F.2d 896, 904 (2d Cir. 1972).

—is the settlement "fair, reasonable, and adequate." [7]

It must be recognized that stockholder litigation is notably difficult and notoriously uncertain.[8] This case is no exception. It is easy enough to draft a complaint, alleging a cause of action under section 10(b),[9] but it is quite another matter to establish free wheeling charges of fraud or manipulative conduct. Here plaintiff's counsel is forced to concede that as the discovery process went forward the prospects of success upon a trial diminished. Answers to interrogatories failed to reveal any meaningful evidence that the Newmans had advance knowledge of the forthcoming decline in the value of Howard's stock or that the final quarter of 1969 would prove to be disastrous for the corporation.[10] A key issue in the case is whether the directors had exercised a prudent business judgment. The burden is upon the plaintiff to establish that a number

of directors had been overreached by the Newmans and others allegedly acting in concert with them.[11] The evidence discovered by the plaintiff was that no fact was concealed from any director, that each was fully informed and aware of all relevant facts. The directors maintained that it was their judgment that the acquisition of the Hausman stock would be beneficial to the corporation; they believed the stock was being offered at a relatively low price; [12] that the purchase would increase the per share earnings of the remaining outstanding shares and provide treasury stock for use in stock option plans or for stock dividends.[13]

Plaintiff's counsel recognized that the answers of the directors to the interrogatories undermined the theory of the charges set forth in the complaint. He thereupon decided to take the oral depositions of the two "independent" directors, defendants Arthur Singer and Dav-

7. *See* West Virginia v. Chas. Pfizer & Co., 314 F.Supp. 710, 740 (S.D.N.Y.1970), aff'd, 440 F.2d 1079 (2d Cir.), cert. denied, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed. 2d 115 (1971) ; Zerkle v. Cleveland-Cliffs Iron Co., 52 F.R.D. 151, 159 (S.D.N.Y. 1971) ; Glicken v. Bradford, 35 F.R.D. 144, 146 (S.D.N.Y.1964).

8. *See* Zerkle v. Cleveland-Cliffs Iron Co., 52 F.R.D. 151, 159 (S.D.N.Y.1971).

9. *Cf.* Superintendent of Ins. v. Bankers Life & Cas. Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971).

10. The financial reports available at the time the agreement was approved by the Board of Directors did not indicate that a substantial decline in revenues was in the offing. The Chairman's comments to the 1969 Annual Report for Howard stated :

"Although our Company achieved record sales volume in 1969, unfavorable economic conditions during the last months of the year adversely affected our earnings. . . . [The] downturn in our earnings occurred after three straight years of progressively higher earnings. After a favorable Spring season, our expectations for the Fall season failed to materialize as progressively higher inflationary costs affected all aspects of

our business, particularly labor costs, bank interest and new store start-up costs."

Defendants also asserted that the decline in sales was in part due to an unseasonably warm Fall that year and an unpredictable change in fashion tastes.

11. As a general rule the courts are reluctant to interfere in the internal affairs of a corporation or with business decisions made by its directors. *See* Evans v. Armour & Co., 241 F.Supp. 705, 712 (E.D. Pa.1965) ; Fielding v. Allen, 99 F.Supp. 137, 142 (S.D.N.Y.1951) ; Blaustein v. Pan Am. Petroleum & Transp. Co., 293 N.Y. 281, 303–304, 56 N.E.2d 705 (1944) ; Everett v. Phillips, 288 N.Y. 227, 232, 43 N.E.2d 18 (1942) ; Greenbaum v. American Metal Climax, Inc., 27 A.D.2d 225, 278 N.Y.S.2d 123, 128 (1st Dep't 1967).

12. The contract price was $32 per share; on the over-the-counter market, on the date of the agreement, Howard stock was quoted at 35¼ bid, 36 asked.

13. It should be noted that permission to effect the purchase was granted by several banks which had entered into a revolving credit agreement with the corporation.

id Shivitz, who are lawyers. Their testimony dimmed rather than enhanced the prospect of success—indeed plaintiff's counsel was forced to concede that the deposition testimony "cast further doubt on the provability of plaintiff's charges." The depositions confirmed that the acquisition of the shares was viewed as beneficial to Howard; in addition, both directors urged the Newmans not to buy the shares, since they regarded it as a corporate opportunity. The strength of the defense led plaintiff's counsel to explore the prospect of settlement, with the result that an accord was reached. The defense, while vigorously continuing to deny plaintiff's charges, felt that a settlement was justified in an effort to avoid further expense.[14]

The settlement in effect will reduce the purchase price of the shares acquired by the corporation by $110,000, less the allowance to be made to plaintiff's counsel and less such other expenses the corporation may incur in connection with this suit. Viewed as against the initial recovery sought, admittedly the amount is slight; but the real gain of the corporation is the termination of an expensive and time-consuming litigation. Taking into account all the circumstances of the case, particularly the unlikelihood that plaintiff will prevail upon the basis of the evidence disclosed under the discovery procedure, the settlement falls within that "range of reasonableness" which warrants its approval, and it is hereby approved.[15]

We next consider the application made by plaintiff's counsel for an award of $27,500 in fees and expenses. The criteria to be considered in passing upon the requested allowance are well known and need not be repeated in extenso here.[16] A prime factor is the benefit to the corporation on whose behalf the action is brought. In end result the amount of recovery may be said to be minimal. Indeed, in the light of the requested allowance it may be observed that the principal beneficiary is the attorney representing the plaintiff and not the corporation. As noted, the gross settlement is $110,000. Legal and other expenses already incurred and likely to be incurred by Howard in this action total $4,500; in addition, it may incur expenses for indemnification of directors for the uninsured portion of their reasonable expenses in connection with the defense of this action under the corporation's by-laws and sections 721–727 of the New York Business Corporation Law,[17] which expenses it is estimated will not exceed $24,000, or a total of $28,500. If the $27,500 requested by plaintiff's counsel is allowed, a grand total of $56,000 must be deducted from the $110,000, resulting in a reduction in cost of the shares which are the subject matter of this litigation by $54,000. And against this slight dollar gain, there should fairly be considered the loss imposed upon the corporation when its various employees were diverted from their normal corporate activities and instead required to devote time and attention to the litigation in assembling and furnishing information and documents.

Taking into account the alleged benefit to the corporation, as well as other significant factors, the Court allows the sum of $15,000.

Judgment may be entered in accordance with the foregoing.

14. *See generally* Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 at 1019 (2d Cir., 1973).

15. *See* Newman v. Stein, 464 F.2d 689 (2d Cir.), cert. denied, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972).

16. Angoff v. Goldfine, 270 F.2d 185, 189 (1st Cir. 1959); Pergament v. Kaiser-Frazer Corp., 224 F.2d 80, 83 (6th Cir. 1955); Derdiarian v. Futterman Corp., 254 F.Supp. 617 (S.D.N.Y.1966).

17. N.Y.Bus.Corp.Law §§ 721–727 (McKinney's Consol.Laws, c. 4, 1963), as amended (Supp.1972).