**In re Michael Milken and Associates Securities Litigation.**

**MDL No. 924.**

**In re AMES DEPARTMENT STORES, INC. DEBENTURE LITIGATION.**

**In re AMES DEPARTMENT STORES, INC. NOTE LITIGATION.**

**In re AMES DEPARTMENT STORES, INC. STOCK LITIGATION.**

**This Document Relates to: All Actions.**

**Nos. 92 Civ. 9239(MP), 93 Civ. 4199(MP), 93 Civ. 4105(MP).**

United States District Court, S.D. New York.

July 19, 1993.

Melvyn I. Weiss, Robert P. Sugarman, George A. Bauer, III, Milberg Weiss Bershad Hynes & Lerach, Robert M. Kaplan, Richard Kilsheimer, Frederic S. Fox, Kaplan & Kilsheimer, New York City, for settling plaintiffs.

Edward Labaton, Lawrence A. Sucharow, Goodkind Labaton, Rudoff & Sucharow, Robert S. Schachter, Zwerling, Schachter &

Zwerling, New York City, for plaintiffs in the Stock Litigation.

Arthur N. Abbey, Stephen T. Rodd, Abbey & Ellis, New York City, J. Daniel Sagarin, Elias A. Alexiadaes, Hurwitz & Sagarin, Milford, CT, for plaintiffs in the Note Litigation.

Michael J. Freed, Much Shelist Freed Denenberg, Ament & Eiger, P.C., Chicago, IL, for plaintiffs Avers Wexler, Trustee of Avers Wexler Trust in the Debenture Litigation.

Glen DeValerio, Berman DeValerio & Pease, Boston, MA, for plaintiff Michael Moss in the Debenture Litigation.

Jeffrey A. Klafter, Bernstein Litowitz Berger & Grossmann, New York City, for plaintiff Jay D. Hirsch in the Debenture Litigation.

Richard B. Danenberg, Lowey Danenberg Bemporad & Selinger, P.C., New York City, for plaintiffs Hardy Phippen and Edward S. Greenwald, M.D. in the Debenture Litigation.

Marvin A. Miller, Miller, Faucher, Chertow, Cafferty & Wexler, Chicago, IL, for plaintiff Avers Wexler, Trustee of Avers Wexler Trust in the Debenture Litigation.

Todd S. Collins, Berger & Montague, Philadelphia, PA, for plaintiff Sheldon Shore in the Stock Litigation.

Bruce Gerstein, Garwin, Bronzaft, Gerstein & Fisher, New York City, for plaintiff David Minkoff in the Stock Litigation.

C. Oliver Burt, III, Chimicles, Burt, Jacobsen & McNew, (formerly Greenfield & Chimicles), Haverford, PA, for plaintiff Rodney B. Shields in the Stock Litigation.

Harvey S. Kronfeld, Harvey S. Kronfeld, P.C., Philadelphia, PA, for plaintiff Samuel H. Title in the Stock Litigation.

Stanley M. Grossman, Pomerantz Levy Haudek Block & Grossman, New York City, for plaintiff Violet Klein in the Stock Litigation.

I. Stephen Rabin, Rabin & Garland, New York City, for plaintiffs Dominick T. and Anne M. Brancato in the Stock Litigation.

Arnold Levin, Levin, Fishbein, Sedran & Berman, Philadelphia, PA, for Plaintiff Goldie Jaroslawicz in the Stock Litigation.

Stuart H. Savett, Savett Frutkin Podell & Ryan, Philadelphia, PA, for plaintiff Goldie Jaroslawicz in the Stock Litigation.

Joel C. Feffer, Wechsler Skirnick Harwood Halebian & Feffer, New York City, for plaintiffs Nathan and Florence Spiro in the Stock Litigation.

David A.P. Brower, Wolf Haldenstein Adler Freeman & Herz, New York City, for plaintiff Charles Collier in the Stock Litigation.

Stephen D. Oestreich, Wolf Popper Ross Wolf & Jones, New York City, for plaintiff David Kahn in the Stock Litigation.

Michael P. Koskoff, Richard A. Fuchs, Koskoff, Koskoff & Bieder, Bridgeport, CT, for plaintiffs in the Stock and Debenture Actions.

Lewis A. Kaplan, David Jaroslaw, Bruce A. Birenboim, Paul Weiss Rifkind Wharton & Garrison, New York City, for defendants Wertheim, Salomon Bros. Inc., Merrill Lynch, Pierce, Fenner & Smith Inc., Shearson Lehman Hutton, Inc., Advest, Inc. and Seidler Amdec Securities Inc.

Andrew M. Schatz, Schatz & Schatz, Ribicoff & Kotkin, Hartford, CT, for defendants Peter B. Hollis, Duane R. Wolter and Phillip M. Chrusz.

Jeffrey M. Rudman, William H. Paine, Hale and Dorr, Boston, MA, for defendants James A. Harmon, Michael D. Leavitt, Rosabeth Moss Kanter, Norman Ricken, Norman B. Asher, Melvin M. Rosenblatt and Earl M. Spector.

Alan R. Glickman, Schulte Roth & Zabel, New York City, for defendants Coopers & Lybrand.

Douglas H. Meal, Ropes & Gray, Boston, MA, for defendants Arthur F. Loewy, Maurice Segall and the TJX Companies, Inc.

### OPINION

MILTON POLLACK, Senior District Judge.

### I. *Preliminary*

A Global Settlement of three class litigations denominated the "Ames Securities Liti-

gations" has been proposed. Each of the class suits was transferred to this Court by the United States Judicial Conference Panel for Multidistrict Litigation. The actions were in various phases of preparation for trial, following appeals in two of them to the Court of Appeals resulting in reversals requiring trial of all three class suits.

Under guidance of the Court, the parties respectively were able to achieve a Global Settlement of all of the suits and that settlement is now before the Court pursuant to Rule 23(e), Fed.R.Civ.P. after notice to members of the classes in the constituent actions, for a determination of the fairness, reasonableness, and adequacy of the Global Settlement, and incident thereto, the allowance of counsel fees, expenses, including administration of the distributions to be made and taxes chargeable against the proposed settlement funds.

The Class suits pending before the Court are briefly described as follows.

1. The Debenture Action was brought on behalf of all persons (except defendants, their family members, and affiliates) who purchased Ames Debentures under a Registration Statement effective October 5, 1989 and thereafter through April 9, 1990. It asserts claims under Sections 11, 12 and 15 of the Securities Act, Rule 10b–5, common law fraud, and negligent misrepresentation. The defendants include present and former officers and directors of Ames (most of whom signed the Debenture Registration Statements), Coopers and Lybrand, an accounting firm, and the underwriters in connection with the Debenture Offering.

2. The Note Action was brought on behalf of all persons (other than defendants, their family members, and affiliates) who purchased Ames Reset Notes under a Registration Statement effective May 16, 1989 and thereafter through April 9, 1990. It asserts claims under Sections 11, 12(2) and 15 of the Securities Act, Sections 10(b) and 20 of the Exchange Act, Rule 10b–5 and for common law fraud. The defendants include present and former officers and directors of Ames, one of the underwriters in connection with the Note offering, Coopers & Lybrand, and TJX. The Note Action was dismissed by the

District Court of Connecticut pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that plaintiffs' claims were time-barred. On April 2, 1993, the United States Court of Appeals for the Second Circuit reversed the decision of the District Court. *In re Ames Department Stores Inc. Note Litigation*, 991 F.2d 968 (2d Cir. 1993).

3. The Stock Action was brought on behalf of all persons (other than defendants, their family members and affiliates) who purchased Ames Common Stock during the period May 10, 1989 through April 10, 1990. The Stock Action asserts claims under Sections 10(b) and 20 of the Exchange Act, Rule 10b–5, common law fraud, and negligent misrepresentation. The defendants include present and former officers of Ames, and Wertheim Schroeder & Co., Inc. ("Wertheim"), one of the underwriters on the Debenture and note offerings (which also served as financial advisor to Ames and whose chairman was also chairman of Ames). The Stock Action was dismissed by the District Court of Connecticut for failure to state a claim. On April 2, 1993, the United States Court of Appeals for the Second Circuit reversed the decision of the District Court. *In re Ames Department Stores Inc. Stock Litigation*, 991 F.2d 953 (2d Cir.1993).

### A. *Plaintiffs' Claims*

In October 1988 Ames—a large discount retailer—doubled its size by acquiring the Discount Store Division of Zayre Corp. for more than $800 million. During 1989, Ames refinanced, in part, that acquisition by selling $355 million in debt securities to the investing public in two public offerings. The first was a $200 million offering of Reset Notes, which became effective on May 16, 1989. The second was a $155 million offering of debentures, which became effective on October 5, 1989. On April 25, 1990—less than one year after the offering of the Reset Notes, Ames filed for bankruptcy. By then, Ames debt securities had lost virtually all of their value. Ames Common Stock, which had traded as high as $19.50 per share during the class period, plummeted to $2.50 per share.

Plaintiffs alleged that, during the class periods, defendants issued a number of positive public statements, in the prospectuses for the debentures and the reset notes, in press releases, in annual and quarterly reports to shareholders, in filings with the SEC, and in other documents, which were false and misleading because they contained material misrepresentations and omitted material facts. Among other things, plaintiffs alleged that defendants misrepresented that the integration of the Zayre stores into Ames was a success, and that Ames would be profitable during its 1990 fiscal year, and omitted to disclose that Zayre's comparable store sales had declined, that many major problems had arisen as a result of the acquisition (including systems integration problems), and that Ames would suffer a substantial loss for its 1990 fiscal year.

### B. Defenses Asserted

While plaintiffs believed that they had strong cases, defendants raised a number of defenses. Defendants argued that each statement relating to Ames' effort to integrate and turn around the Zayre business was accurate when made and was founded on a reasonable factual basis. According to defendants, the bankruptcy filing resulted from post-offering events that were not, and could not reasonably have been, anticipated.

Defendants argued that financial success or failure in the retail industry depends heavily on year-end performance, as the holiday season typically accounts for a disproportionately large part of a retailer's yearly earnings. Ames' performance in November and December 1989, particularly in the former Zayre stores, was worse than Ames' management had projected based on Ames' historical performance. The company's poor results, in turn, led to a severe liquidity crisis and, ultimately, to Ames' bankruptcy filing.

Further, defendants asserted that Ames' disappointing performance was not unusual in the struggling economy at that time (particularly in the Northeast, where many of the stores were located), and that price-cutting from competitors exacerbated the situation. According to defendants, Ames was not the only retail chain to suffer in this environment: numerous Campeau retailers, such as Bloomingdales, Allied Stores Corp. (including Sterns, Bon Marche, and Jordan Marsh) and Federated Department Stores (including Abraham & Strauss, Burdines, and Lazarus) all filed for bankruptcy in January 1990.

With respect to the claims for which plaintiffs had to prove *scienter*, defendants argued that several defendants—including Ames' chief executive and chief financial officer, as well as outside directors of the company— *purchased* significant amounts of Ames' securities during the class periods—a fact which they asserted tends to negate the claim that they acted with *scienter*.

### II. The Settlement

The Settlement proposes to settle three class lawsuits and claims against present and former officers and directors of Ames Department Stores, Inc. ("Ames"), certain underwriters of Ames securities offerings, Coopers & Lybrand, Ames' outside auditors, and TJX Companies Inc. ("TJX"), a company which had representation on the Ames Board of Directors and, through an affiliate, sold its Zayre Stores division to Ames.

The Settlement was reached after three years of hard-fought litigation and months of intensive, difficult, arms-length negotiations. It has been obtained on behalf of purchasers of Ames debentures (7½ percent convertible subordinated debentures due 2014), reset notes (senior subordinated reset notes due 1999) and common stock. These recoveries will enable class members to realize some payment on account of losses suffered by them.

The Settlement consists of $41 million in cash, plus interest earned thereon, which has been deposited into an interest-bearing escrow account for the benefit of class members [1], and 200,000 Series B Warrants of Ames.[2] The Debenture Class (and certain

---

1. An additional settlement of approximately $5.7 million was reached with respect to the claims of the Debenture Class in the Drexel Bankruptcy. That settlement has been previously approved.

2. Each warrant entitles the holder to purchase Ames' common stock, for a period of 7½ years from the date that is six months after the consummation of the Ames plan of reorganization,

other persons who filed claims in the Drexel reorganization) will realize the $5.7 million, referred to in note 1, from the Drexel reorganization proceedings. Although Drexel was originally named as a defendant in the Debenture Action, it was dropped from the amended complaints in the Debenture Action because it filed for bankruptcy. However, plaintiffs' counsel filed a proof of claim in the Drexel bankruptcy on behalf of the Debenture Class; the amount to be received by the Debenture Class is a result of that proof of claim filing and extensive negotiations and proceedings, which resulted in the Securities Litigation Claimant Settlement Agreement dated as of May 3, 1991 in the Drexel reorganization proceeding.

Under the terms of the Settlement, Class members will be required to submit proof of claim forms to obtain a distribution from the Settlement Fund. After deductions from the settlement fund for attorneys' fees, costs and expenses, including taxes due on the Settlement Fund and the expenses of notice and administration of settlement, the remaining net Settlement Fund will be distributed to authorized claimants, on a *pro rata* basis, in accordance with their Recognized Loss. A Plan of Allocation has been set forth in the Notice, which establishes the basis upon which the Recognized Loss will be calculated for the various class members.

Under the Plan of Allocation, the Recognized Loss of authorized claimants in the Debenture Action is defined as follows: (a) for persons who purchased Ames Debentures during the Debenture Class Period and sold the Debentures on or before April 9, 1990 at a loss, the difference between (i) the price paid for the Debentures purchased, and (ii) the price received for the Debentures sold; (b) for persons who purchased Ames Debentures during the Debenture Class Period and held them until April 10, 1990, the difference between (i) the price paid for the Debentures purchased and (ii) $160 per each $1,000 principal amount of Debentures multiplied by the number of Debentures.

at a price equal to 200% of the average closing price of Ames common stock during the 60 trading days following the consummation of the plan of reorganization. The current price of Ames common stock is approximately $2.50 per share.

The Recognized Loss of authorized claimants in the Stock Action is defined as follows: (a) for persons who purchased Ames common stock during the Stock Class Period and sold the Stock on or before April 10, 1990 at a loss, 60% of the difference between (i) the price paid for the shares purchased, and (ii) the price received for shares sold; (b) for persons who purchased Ames common stock during the Stock Class Period and held it until April 11, 1990, 60% of the difference between (i) the price paid for shares purchased and (ii) $2.00 per share multiplied by the number of shares.

The Recognized Loss of authorized claims in the Note Action is defined as follows: (a) for persons who purchased Ames Notes during the Note Class Period and sold the notes on or before April 9, 1990 at a loss, 60% of the difference between (i) the price paid for Notes purchased and (ii) the price received for Notes sold; (b) for persons who purchased Ames Notes during the Note Class Period and held them until April 10, 1990, 60% of the difference between (i) the price paid for Notes purchased, and (ii) $300 per each $1,000 principal amount of the Notes multiplied by the number of notes.

### III. *The Notice of the Settlement*

Pursuant to an Order entered by this Court dated May 19, 1993, more than 11,750 copies of the Notice of Pendency of Class Actions and of Proposed Settlement and Hearing Thereon (the "Notice") were mailed to the members of the Classes. In addition, a Summary Notice was published in the national editions of the *Wall Street Journal* and *The New York Times*, as well as in the *National Law Journal* and *Redemption Digest* [3].

The deadline for filing objections to the Settlement was June 25, 1993. No objections to the Settlement have been filed. The lack of objection by any Class Member is significant.

3. Pursuant to the Court's direction, a copy of the Notice was also sent to *Women's Wear Daily*.

## IV. *Discussion*

### A. *Due Notice of the Pendency of the Ames Securities Litigations and of the Proposed Settlement*

■■■ Normally, settlement notices need only describe the terms of the settlement generally. *O'Brien v. National Property Analysts Partners,* 739 F.Supp. 896, 901 (S.D.N.Y.1990); *Handschu v. Special Services Division,* 787 F.2d 828, 833 (2d Cir.1986); *Weinberger v. Kendrick,* 698 F.2d 61, 70 (2d Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983) ("notices to class members can predictably contain only a limited amount of information"). Here, the Settlement notices went well beyond this minimal requirement and described in detail a variety of important matters relating to the litigation and to the proposed Settlement.

The Notice mailed to the classes provided detailed information concerning: (a) the rights of class members, including the right of certain class members to opt out of two of the proposed settlements [4], (b) the settlement with defendants and the settlement with Drexel, (c) the plan of allocation, (d) the judgment to be entered, (e) a notice to banks, brokers and other nominees, (f) plaintiff's counsels' application for fees, costs, and expenses, and (g) the hearing to take place before this Court.

Accordingly, there is no doubt that the form of notice utilized in this case was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). *See also O'Brien,* 739 F.Supp. at 901. The notice here easily meets these criteria.

As a matter of law, therefore, the level of detail in the notice here is more than sufficient to apprise interested parties of the pendency of these actions and afford them an opportunity to present their objections. In fact, the courts have repeatedly sustained notices in cases where the notice included only a very general description of the proposed settlement. *See, e.g., In re Equity Funding Corp. of America Securities Litigation,* 603 F.2d 1353, 1361–62 (9th Cir.1979); *In re Corrugated Container Antitrust Litigation,* 643 F.2d 195, 223–24 (5th Cir.1981), *aff'd* 659 F.2d 1322, *cert. denied,* 456 U.S. 998, 102 S.Ct. 2283, 73 L.Ed.2d 1294 (1982), *cert. denied* 456 U.S. 1012, 102 S.Ct. 2308, 73 L.Ed.2d 1309. Here, by contrast, the notices included extensive information about the history of these proceedings and the terms of the proposed Settlement, *inter alia.*

### B. *Standards For a Fair, Reasonable, and Adequate Settlement*

The standards governing approval of class action settlements are well-established in this Circuit. In *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir.1974) *("Grinnell"),* the Second Circuit Court of Appeals held that the following were factors to be considered in evaluating a class action settlement:

(1) the complexity, expense and likely duration of the litigation . . .; (2) the reaction of the class to the settlement. . . .; (3) the stage of the proceedings and the amount of discovery completed . . .; (4) the risks of establishing liability . . .; (5) the risks of establishing damages . . .; (6) the risks of maintaining the class action through the trial . . .; (7) the ability of the defendants to withstand a greater judgment . . .; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . .; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . (citations omitted).

■■■ The District Court must evaluate the fairness of the proposed Settlement in light of the potential recovery and the risks of further litigation. In addition, the Court should take into consideration that the Settlement was reached after arm's-length negotiations among counsel authorized to act on behalf of the respective parties, and that the reaction of the classes, after being adequate-

---

4. A prior notice of Pendency was mailed to members of the Debenture Class, which advised them of their right to exclude themselves from that class.

ly notified of the Settlement and of the opportunity to object, has been very positive. *Grinnell,* 495 F.2d at 462; *Weinberger v. Kendrick,* 698 F.2d at 73; *Malchman v. Davis,* 706 F.2d 426, 433–34 (2d Cir.1983), *cert. denied,* 475 U.S. 1143, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986).[5] It is significant that no class member of the vast array given notice has objected to the Settlement.

■ In weighing the foregoing factors, the Court should further consider that the law favors and encourages the settlement of class action suits. *Weinberger v. Kendrick,* 698 F.2d at 73; *State of West Virginia v. Chas. Pfizer & Co.,* 440 F.2d 1079, 1085 (2d Cir.), *cert. denied,* 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971). *See also, New York Hotel and Motel Trades Council, AFL–CIO v. Hotel Ass'n of New York City, Inc.,* 747 F.Supp. 1074, 1077 (S.D.N.Y.1990).[6] In evaluating the settlement of a securities class action, the Courts have long recognized that such litigation "is notably difficult and notoriously uncertain." *Lewis v. Newman,* 59 F.R.D. 525, 528 (S.D.N.Y.1973).

■ The approval of the proposed settlement of a class action is a matter of discretion for the trial court. *Newman v. Stein,* 464 F.2d 689, 692 (2d Cir.), *cert. denied,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972). In exercising that discretion, the Court should recognize that, as a matter of sound policy, settlements of disputed claims are encouraged. *Williams v. First National Bank of Pauls Valley,* 216 U.S. 582, 595, 30 S.Ct. 441, 445, 54 L.Ed. 625 (1910); *Florida Trailer and Equipment Co. v. Deal,* 284 F.2d 567, 571 (5th Cir.1960); *Masterson v. Pergament,* 203 F.2d 315, 330 (6th Cir.), *cert. denied,* 346 U.S. 832, 74 S.Ct. 33, 98 L.Ed. 355 (1953).

■ The ultimate test for the exercise of the Court's discretion in approving a settlement of a class action pursuant to Rule 23 is whether the settlement, taken as a whole, is fair, adequate, and reasonable. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–25, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968); *Malchman v. Davis,* 706 F.2d at 433; *State of West Virginia v. Chas. Pfizer & Co.,* 314 F.Supp. 710, 740 (S.D.N.Y. 1970), *aff'd,* 440 F.2d 1079 (2d Cir.), *cert. denied,* 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971).

■ In evaluating the proposed settlement, the Court is not required to engage in a trial of the merits when considering the prospects of success in the litigation. *Newman v. Stein,* 464 F.2d at 692; *Republic National Life Insurance Company v. Beasley,* 73 F.R.D. 658, 668 (S.D.N.Y.1977) (Pollack, J.) ("In evaluating the proposed settlement, the Court is not to compare its terms with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion"); *In re RJR Nabisco, Inc. Securities Litigation,* [1992 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 96,984 at 94,267, 1992 WL 210138 (S.D.N.Y. August 24, 1992).

It must also be recognized that victory— even at the trial stage—is not a guarantee of ultimate success. *See, e.g., Berkey Photo, Inc. v. Eastman Kodak Co.,* 457 F.Supp. 404 (S.D.N.Y.1978), *aff'd in part, rev'd in part,* 603 F.2d 263 (2d Cir.1979), *cert. denied,* 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980), in which a multimillion dollar judgment was reversed. Here, given the number of defendants and the complexity of the issues, appeals are a distinct possibility. The aspect of resulting delay and uncertainty favors settlement at this juncture.

---

5. *See also Breiterman v. Roper Corp.,* [1989–1990 Transfer Binder] Fed.Sec. 1. Rep. (CCH) ¶ 94,-885, at 94,831, 1990 WL 15535 (S.D.N.Y. January 12, 1990); *Duban v. Diversified Mortg. Investors,* 87 F.R.D. 33, 38–39 (S.D.N.Y.1980); 7B Wright & Miller, *Federal Practice and Procedure: Civil,* § 1797.1 (2d Ed.1986)'.

6. The law in other Circuits is in accord. For example, the Fifth Circuit has stated: "Particularly in class action suits, there is an overriding public interest in favor of settlement. It is common knowledge that class action suits have a well deserved reputation as being most complex." *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir.1977) (citations omitted). *See also Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir.1976).

In appraising the fairness of a proposed settlement, the view of experienced counsel favoring the settlement is "entitled to a great weight." *Josephson v. Campbell* [1967–1969 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,347, at 97,658 (S.D.N.Y. January 24, 1969); *see also, In re RJR Nabisco, Inc. Securities Litigation,* [1992 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,984 at 94,267, 1992 WL 210138; *Boggess v. Hogan,* 410 F.Supp. 433, 437 (N.D.Ill.1975); *Entin v. Barg,* 412 F.Supp. 508, 515 (E.D.Pa.1976). The Court is not required to substitute its business judgment for that of the parties. *See Cooper v. Lewson,* [1978 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,329 at 93,099 (S.D.N.Y. January 31, 1978); *Burger v. CPC International, Inc.,* 76 F.R.D. 183, 188 (S.D.N.Y.1977); *Schleiff v. Chesapeake and Ohio Railway Co.,* 43 F.R.D. 175, 178 (S.D.N.Y.1967). *See, e.g., Siegel v. Realty Equities Corp.,* [1973 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 94,102 at 94,446, 1973 WL 414 (D.C.N.Y. July 30, 1973) (Court found itself "in no position to substitute its judgment for that of honest and competent attorneys, who ... have made a determination that the settlement represents a fair and realistic appraisal of their clients' chances of ultimate success").

There is thus a strong initial presumption that the compromise as negotiated herein under the Court's supervision is fair and reasonable. *See, e.g., Katz v. E.L.I. Computer Systems, Inc.,* [1970–1971 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,994, at 90, 676, 1971 WL 251 (D.C.N.Y. April 5, 1971); *Josephson v. Campbell,* [1967–1969 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,347 at 97,658 (S.D.N.Y. January 24, 1969); *Wittner v. Ghen,* [1969–70 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 92,502, at 98,352, 1969 WL 2847 (S.D.N.Y. October 27, 1969).

## C. *Possible Recovery and Ability of Defendants to Withstand a Greater Judgment*

Pursuant to *Grinnell,* the court may consider the value of the proposed Settlement in light of the potential recovery and the ability of the Settling Participants to withstand a greater judgment.

Although plaintiffs asserted that the damages suffered by the classes in these litigations amounted to hundreds of millions of dollars, defendants asserted that the damages were a small percentage of those numbers and that the decline in the price of Ames securities was due to factors such as the decline in the economy in the Northeast, which had nothing to do with the alleged misrepresentations and omissions by defendants. Typically, the magnitude of damages becomes a battle of experts at trial, with no guarantee of the outcome in the eyes of the jury.

While plaintiffs cannot predict what each claimant will receive, the Second Circuit has held that a settlement can be approved even though the benefits amount to a small percentage of the recovery sought. *Grinnell,* 495 F.2d at 455. "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself mean that the proposed settlement is grossly inadequate and should be disapproved." *Id.* (footnote omitted). The Court explained: "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 455 n. 2. In the District Court decision in *City of Detroit v. Grinnell Corp.,* 356 F.Supp. 1380, 1386 (S.D.N.Y.1972), *aff'd in part, rev'd in part,* 495 F.2d 448 (2d Cir.1974), Judge Charles Metzner of this Court found a proposed settlement of 3.2% to 3.7% of the potential recovery "'well within the ball park.'"

Clearly, the settlement here is well within the "range of reasonableness." As set forth above, the Debenture Class (and certain other persons who filed claims in the Drexel reorganization) will additionally receive the benefit of the $5.7 million settlement from the Drexel reorganization; thus the percentage of recognized loss to be received by the claimants in the Debenture Action will be greater than the percentage of recognized loss to be received by claimants in the Stock and Note Actions.

In numerous cases, courts have approved settlements where the class members received different percentages of recovery to

take into account different factors. *In re Agent Orange Product Liability Litigation*, 611 F.Supp. 1396, 1411 (E.D.N.Y.1985), *aff'd in part, rev'd in part*, 818 F.2d 179 (2d Cir.1987), *cert. denied*, 487 U.S. 1234, 108 S.Ct. 2899, 101 L.Ed.2d 932 (finding that "if one set of claims had a greater likelihood of ultimate success than another set of claims, it is appropriate to weigh 'distribution of the settlement ... in favor of plaintiffs whose claims comprise the set' that was more likely to succeed"); *In re Equity Funding Corp. of America Securities Litigation*, 603 F.2d 1353, 1363–67 (9th Cir.1979) (holding that the trial court, in its effort to fairly allocate settlement funds among class members, did not abuse its discretion in approving an offset provision of a plan of allocation which took into account the receipt of money and stock by certain debenture holders in prior related reorganization proceeding); *see also, In re Investors Funding Corp. of New York Securities Litigation*, 9 B.R. 962, 965 (D.C.N.Y.1981). Here, counsel for the classes determined the relative strength of claims for each class, and made adjustments to each class's recognized loss calculation based on this determination.

**D. Complexity, Expense, and Likely Duration of the Litigation**

Absent the Settlement, each lawsuit—a complex affair—would have to be tried to determine the defendants' liabilities. While a trial date had been set in the Debenture Action, the prospect of lengthy appeals, whatever the outcome of this trial and the other trials to follow, would extend the litigations for an inordinate period. Prospects for appeals in each case following a verdict were reasonably to be contemplated.

In light of the Settlement proposed, this is clearly a case where litigations through trials and appeals would be burdensome, perhaps needlessly expensive, and possibly could substantially reduce the amounts now available for settlement.[7] The complexity, expense and likely duration of the litigations are all factors that the Court should

consider in approving the proposed settlement. *Grinnell*, 495 F.2d at 463; *In re Drexel Burnham Lambert Group, Inc.*, 130 B.R. 910 (S.D.N.Y.1991), *aff'd* 960 F.2d 285 (2d Cir.1992). Avoiding wasteful litigation and expense are factors which "lay behind the Congressional infusion of power to compromise." *Florida Trailer and Equipment Co. v. Deal*, 284 F.2d 567, 571 (5th Cir.1960); *State of West Virginia v. Chas. Pfizer & Co.*, 440 F.2d at 1085.

**E. Risks Involved In Establishing Liability, Damages, and in Maintaining the Class Action Through Trial**

*Grinnell* holds that in assessing the fairness, reasonableness, and adequacy of the settlement, the Court should consider such factors as the "risks of establishing liability," "the risks of establishing damage," and "the risks of maintaining the class action thorough the trial." *Grinnell*, 495 F.2d at 463 (citations omitted); *In re Drexel Burnham Lambert Group Inc.*, 130 B.R. 910.

As set forth in the Joint Affidavit and herein, while plaintiffs believed that they had a strong case, there were substantial risks involved in proving liability and damages. As discussed, defendants contended that all of their public statements were truthful when made and had a firm factual basis, and that any decline in the price of Ames' securities was caused by factors beyond their control and independent of any alleged wrongdoing by defendants.

By virtue of the Settlement, the class members in each of the Ames Securities litigations will be compensated to some degree. The allocation plan provides for a fair and orderly procedure that will allocate to each class action an appropriate share without the cost and the risk to plaintiffs that extensive litigation, trial, and appeals might entail.

**F. Knowledge of the Strengths and Weaknesses of the Claim Involved**

"[T]he stage of the proceedings and the amount of discovery completed" is another

---

7. The officers' and directors' liability insurance policies, which funded a major part of the settlement, were being utilized for defense costs, and

if the litigations were not settled, substantially less would be available from the insurance policies.

factor which the Courts consider in approving a settlement. *Grinnell*, 495 F.2d at 463. Here, the Ames Securities Litigations have been pending for more than three years and there has been very extensive discovery. Indeed, the Debenture Action was in final preparation for trial at the time of Settlement. As set forth in the Joint Affidavit and herein, plaintiffs in the Debenture Action took 28 depositions. Further, counsel report that they reviewed more than 600,000 pages of documents. Counsel for plaintiffs conducted extensive negotiations with defendants' counsel. Under the circumstances, more than enough information was available to counsel and plaintiffs to assess whether to recommend to the Court that the Settlement is fair, reasonable, and adequate.

 These intensive litigation efforts afforded the parties an opportunity to assess the strengths and weaknesses of the litigation in negotiating the proposed Settlement, and are entitled to great weight in the consideration of the proposal. *E.g., In re Drexel Burnham Lambert Group Inc.*, 130 B.R. 910; *Schlusselberg v. Keystone Custodian Funds, Inc.*, [1973 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,901 at 93,612, 1973 WL 375 (D.C.N.Y. March 15, 1973); *Robertson v. National Basketball Ass'n*, 72 F.R.D. 64, 70 (S.D.N.Y.1976), *aff'd*, 556 F.2d 682 (2d Cir. 1977); *Fox v. Glickman Corp.*, 253 F.Supp. 1005, 1012–13 (S.D.N.Y.1966).

### G. *Opinions of Counsel*

The plaintiffs in the Ames Securities Litigations are represented by law firms who have actively litigated these actions. These firms are very experienced in this type of litigation and, in their opinion, the Settlement is fair, reasonable, and adequate.

Experienced counsel's opinions are entitled to great weight by the Court in determining whether to approve the Settlements. *Weinberger v. Kendrick*, 698 F.2d at 74. As this Court stated in *Republic National Life Insurance Co. v. Beasley*, 73 F.R.D. 658, 668 (S.D.N.Y.1977) (Pollack, J.):

> [T]he determination of what amount of money constitutes a fair settlement is not a matter of mathematical science. On the one hand perhaps plaintiff's counsel have

obtained more ... than a jury would award; on the other hand, it may be less. The court is in no position to substitute its judgment for that of honest and competent attorneys, who ... have made a determination that the settlement represents a fair and realistic appraisal of their clients' chances of ultimate success. *Siegel v. Realty Equities Corp.* [1973 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,102, at 94,446, 1973 WL 414 (S.D.N.Y. July 30, 1973).

Similarly, in *Josephson v. Campbell*, [1967–1969 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,347, at 97,658 the Court held:

> There is a strong initial presumption that the compromise is fair and reasonable. This rests on a number of factors. Counsel for plaintiff is able and experienced, particularly in the specific area with which these actions are concerned. His judgment is entitled to great weight.

*Accord In re RJR Nabisco, Inc.*, [1992 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,984 at p. 94,267, 1992 WL 210138; *Lyons v. Marrud*, [1972–1973 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,525 at 92,519, 1972 WL 327 (D.C.N.Y. June 6, 1972); *Cannon v. Texas Gulf Sulphur Co.*, 55 F.R.D. 308 (S.D.N.Y.1972). *See also Schlusselberg v. Keystone Custodian Funds Inc.*, [1973 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,901, at 93,612, 1973 WL 375 (S.D.N.Y. March 15, 1973); *Schleiff v. Chesapeake and Ohio Ry.*, 43 F.R.D. at 179; *Fox v. Glickman Corp.*, 253 F.Supp. 1005 (S.D.N.Y.1966); *Cherner v. Transitron Electronic Corp.*, 221 F.Supp. 48, 51 (D.Mass.1963). Accordingly, counsels' belief that the Settlements are fair, reasonable, and adequate in light of the possible recovery is a factor that the Court should—and does—consider in passing upon the Settlements.

### H. *The Response of the Class Members*

Another significant factor is the absence of any negative response of the members of the Class. *Josephson v. Campbell*, [1967–1969 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,347 at 97,658; *Schreiber v. Jacobs*, 128 F.Supp. 44, 60 (E.D.Mich.1955). Here, although the deadline for filing objections has now passed, Notice was mailed to more than

11,750 persons, and Summary Notice was published in the national editions of the *Wall Street Journal* and *The New York Times,* as well as in the *National Law Journal,* and *Redemption Digest,* there have been no objections to the Settlements by any member of any of the classes in the Ames Securities Litigations, and no member of .any of the classes appeared in Court on the return day of the hearing on the Settlement.

### Conclusion

The Court finds on all the facts and circumstances herein that the proposed Settlement with defendants is, in all respects, reasonable, fair, and adequate, and is completely approved in all respects and should be consummated. A separate ruling will be made as to the allowable expenses in connection therewith. A judgment accordingly should be submitted to the Court for its consideration and signature.

So Ordered.