**In re BALDWIN–UNITED CORPORATION LITIGATION.**

**This Document Relates To:**

**Alfred LINTON and Jerome W. Eichelsbacher, Plaintiffs,**

v.

**SHEARSON LEHMAN/AMERICAN EXPRESS, INC., et al., Defendants.**

**Vincent ERTI, et al., Plaintiffs,**

v.

**PAINE WEBBER JACKSON & CURTIS, INC., et al., Defendants.**

**Oscar J. WOODS, Plaintiff,**

v.

**W.H. NEWBOLD'S SONS & CO., INC., et al., Defendants.**

**Steven A. PEREL, Plaintiff,**

v.

**ROTAN MOSLE, INC., et al., Defendants.**

**MDL No. 581.**
**Nos. M 21–35 (CLB), 83 Civ. 8476 (CLB), 83 Civ. 9085 (CLB), 84 Civ. 2235 (CLB) and 84 Civ. 8879 (CLB).**

United States District Court, S.D. New York.

June 27, 1986.

David Bershad, Milberg, Weiss, Bershad, Specthrie & Lerach, New York City, Marvin Miller, Marvin A. Miller & Associates, Chicago, Ill., for plaintiffs.

Eva H. Posman, Christopher E. O'Brien, Gaston & Snow, New York City, for Paine Webber and Rotan Mosle.

Harvey D. Myerson, Lloyd S. Clareman, Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, New York City, for Shearson Lehman.

Lawrence J. Fox, James S. Gkonos, Drinker Biddle & Reath, Philadelphia, Pa., for W.H. Newbold's Sons & Co.

## MEMORANDUM DECISION

BRIEANT, Chief Judge.

By motion fully argued and submitted on March 7, 1986, plaintiffs in this multidistrict litigation seek class certification pursuant to Rule 23, F.R.Civ.P., in each of the above-captioned four actions, which have been consolidated in this Court by transfer orders on the Judicial Panel on Multidistrict Litigation. Familiarity of the reader with all prior proceedings in this litigation is assumed, although the Court directs special attention to its decision *In re Baldwin–United Corp.*, 105 F.R.D. 475 (S.D.N.Y. 1984), in which the Court certified tentative classes in fourteen related cases against different defendants on similar claims, for the purpose of settlement. Subsequently, a total of twenty-four consolidated class actions against that many broker-dealer defendants in the Baldwin–United securities litigation were certified and each was settled.

Plaintiffs in these four remaining actions allege that the defendant broker-dealers and Planco, Inc. engaged in a common course of fraudulent conduct in omitting material information in connection with their sales of certain investment contracts to the plaintiffs. These contracts, known as single premium deferred annuities (SPDAs), were issued from 1979 to 1983 by two insurance subsidiaries of Baldwin–United and were marketed to the public nationwide by various means, including sale through broker-dealers such as the defendants in these four actions. In 1983, the two issuing insurance companies and four other subsidiaries that reinsured the SPDAs were placed in rehabilitation, and the parent corporation, Baldwin–United, entered bankruptcy. Thereafter, SPDA purchasers, including the class plaintiffs herein, commenced the federal civil actions that eventually were consolidated into this multidistrict litigation.

Jurisdiction is conferred over the federal law claims by Section 22 of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77v, Section 27 of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78aa, and Section 4 of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964. The Court is likewise empowered to hear the state statutory and common law claims pleaded by virtue of diversity of citizenship and under principles of pendent jurisdiction.

The amended consolidated complaints in the *Linton*, *Erti* and *Woods* actions and the complaint in *Perel* each recite nine separately denominated claims for relief alleging violations of Sections 5, 12(1) and 12(2) of the 1933 Act, 15 U.S.C. §§ 77e, 77l, § 10(b) of the 1934 Act, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder, and Section 1962(c) of RICO, as well as common law fraud and deceit and violations of state securities, consumer and fiduciary responsibility laws. The plaintiffs also assert claims premised on common law negligence, breach of contract and breach of fiduciary duty against all defendants except Planco, Inc. ("Planco"). Except for variations in the pleadings to account for facts peculiar to each plaintiff, the complaints are identical in all respects perti-

nent to these class certification motions. Therefore, the Court will not distinguish among them when examining their suitability for class certification, except as may be required to consider specific, fact-oriented arguments raised by a particular broker-dealer that call for individualized analysis.

*Numerosity*

In order to qualify for class action treatment, plaintiff must demonstrate that each of the four prerequisites set forth in Rule 23(a) has been satisfied and, in addition, that at least one of the factors described in Rule 23(b) is present. The first requirement, that the classes be so numerous that joinder of all the aggrieved individuals would be impracticable, is not contested here. Over several years, each broker-dealer sold SPDAs having an aggregate face value well in excess of a million dollars to purchasers throughout the country. The identity and exact number of prospective class members are ascertainable from defendants' records and those of the state rehabilitators of the issuers, and it is reasonable to conclude in view of the magnitude of this marketing effort that the number of affected persons would justify class certification.

*Commonality*

The second requirement, commonality, is more problematic. Under Rule 23(a)(2), plaintiffs must show that common questions of law and fact susceptible to class treatment predominate among the putative class members' claims. The gravamen of plaintiffs' complaints is that the defendants, in connection with their business of analyzing investment opportunities and providing financial services to clients, each engaged in a similar unified course of conduct to promote and sell Baldwin–United's SPDAs to the public without disclosing that the issuer was experiencing financial and regulatory difficulties. Plaintiffs contend that the defendants, at the corporate, policy making level, knew or recklessly disregarded evidence of Baldwin–United's precarious financial condition and that they elected to implement or maintain standardized marketing practices that concealed the true investment risks of the SPDAs.

Those practices, plaintiffs allege, emphasized the safety, liquidity and promising investment aspects of the SPDAs even though information available to the defendants foretold Baldwin–United's collapse. Plaintiffs contend that the defendants' failure to investigate and ascertain the solidity of the SPDAs' financial backing, their practice of using uniformly deceptive promotional materials to solicit purchases, and their failure or refusal to disclose the material omissions and half-truths embodied in their marketing strategy together caused SPDA holders to sustain substantial injury when their investments deteriorated.

The broker-dealers, for their part, deny that common issues of law and fact predominate. They maintain that the core issues submitted by plaintiffs in their complaints turn largely on oral rather than written representations, or on non-uniform documents that will require greater investigation and analysis of individual facts than class treatment will allow. For example, defendants assert, the threshold issue— whether the SPDAs are in fact securities— invites inquiry into the manner in which the SPDAs were sold and how they were described to prospective investors. Similarly, allegations of statutory and common law fraud would require the Court to make findings as to the parties' state of mind, the information disclosed, and also the fluctuating fortunes of Baldwin as of the time a particular investor made his or her purchase. The defendants therefore conclude that the highly individualized character of these transactions, affecting some 50,000 investors, makes class certification inappropriate.

This Court disagrees. The nub of plaintiffs' claims is that material information was withheld from the entire putative class in each action, either by written or oral communication. Essentially, this is a course of conduct case, which as pled satisfies the commonality requirement of Rule 23, F.R.Civ.P. *See Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed. 2d 766 (1969). Although their circumstances may vary slightly, the class members

are united in attempting to establish the defendants' liability for fraudulently creating an illusion of profitability and a false sense of security when the undisclosed facts suggest otherwise. The fact that the Planco marketing brochures may have varied slightly from broker to broker and customer to customer is not controlling here. Plaintiffs allege not that the promotional materials themselves were uniform, but rather that the information they contained—and hence that the broker-dealers disseminated—was uniformly misleading. Thus, at the very outset, the common issue of fact uniting all SPDA purchasers is whether the Planco sales literature to which they were exposed was distorted by identical half-truths and omissions that materially affected their investment decisions. Following closely are common questions of the broker-dealers' own culpability in utilizing these materials and in failing to detect and disclose information that would have revealed the SPDAs' shaky foundations. Liability in this case does not depend on proof of the individual, face-to-face dealings between the class members and the registered representatives of the broker-dealers, and slight differences in the class members' positions will not defeat their common status as alleged victims of similar misrepresentations. *See Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). The wrongful conduct alleged by plaintiffs occurred at the management level, if it did, and manifested itself in the defendants' course of promoting and selling the SPDAs. As a result, the relevant questions are readily susceptible to class-wide proof.

Indeed, inquiries into the actual sales process are of secondary importance. Plaintiffs are not required to establish how each and every SPDA was sold in order to prove that the SPDAs were securities. Similarly, it is not fatal to class certification that a particular investor did not receive or rely upon the contents of a Planco brochure. In a case such as this where liability would rest primarily on a failure to disclose material facts, positive proof of reliance is not a prerequisite to recovery.

*Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). Similarly, the presence of oral representations or embellishments proffered by an account representative will not rend this class, even if they were the sole basis for an individual's decision to purchase an SPDA. Unlike *In re Scientific Control Corp. Securities Litigation,* 71 F.R.D. 491 (S.D.N.Y.1976), and other cases where claims based on oral representations were denied class status, in this case the representations related to objective factors—the issuer's financial stability or the safety, yield and liquidity of the SPDAs—that originated from a common source: the Planco documents or the broker-dealers' alleged refusal to conduct their own investigations. *See Korn v. Franchard Corporation,* 456 F.2d 1206, 1212 (2d Cir.1972). Even proof of a material variance among the representations will not defeat the class if certain omissions, inferred from their absence in the Planco literature, were common to all. *See Esplin v. Hirschi,* 402 F.2d 94, 99–100 (10th Cir. 1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969).

■ The defendants also argue that individual questions relating to the timeliness of certain securities claims predominate over any common issues that may exist. The Court disagrees. Camouflaged as an attack on commonality, this argument in fact invites the Court to examine and accept in the course of these class certification motions an affirmative defense that is potentially dispositive of several claims in this litigation. Such inquiry is outside the scope of Rule 23 and indeed defies the principle enunciated in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), that a court may not review the substantive issues raised in a class complaint when determining the claims' suitability for class treatment. *See, e.g., Chevalier v. Baird Savings Association,* 72 F.R.D. 140, 150 (E.D.Pa.1976); *see also Mersay v. First Republic Corporation of America,* 43 F.R.D. 465, 471 (S.D. N.Y.1968) (class certified notwithstanding

individual questions as to statute of limitations).

Accordingly, the Court concludes that common issues of fact predominate in these actions and that the requirements of Rule 23(a)(2) have been satisfied.

*Typicality*

■ The third prerequisite for maintaining a class action under Rule 23 is that the individual claims advanced by the named plaintiffs are sufficiently typical of those asserted by the class members they purport to represent. Rule 23(a)(3), F.R.Civ.P. As a general rule, a plaintiff's claim meets the typicality requirement if it arises from the same events or course of conduct that gives rise to the claims of other class members and if it is based on evidence and legal theories consistent with the other members' claims. *Dura–Bilt Corporation v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y.1981). The test, ultimately, is whether the class representative will promote the interests of the class as he protects his own.

Because this inquiry focuses on the nature of the claims asserted, factual differences involving the date, type and manner of the purchase, the investor's perception of the transaction, or even the information furnished to him at the time will not destroy typicality if each class member was the victim of the same material omissions and the same consistent course of conduct. *See Dura–Bilt, supra; Oscar Gruss & Son v. Geon Industries, Inc.*, 75 F.R.D. 531, 534–35 (S.D.N.Y.1977). This is so even though, as the defendants claim, the amount and type of information available to the public changed constantly throughout the class period, and the named plaintiffs supposedly had purchased their SPDAs at a time when Baldwin–United enjoyed good financial health. The lynchpin of plaintiffs' claim is the alleged nondisclosure of material facts relating to Baldwin–United's solvency; whether the named plaintiffs can prove an actionable omission to sustain their claims invites comment on the merits, which is forbidden in the context of this class certification motion. *See Eisen*, 417 U.S. at 178, 94 S.Ct. at 2152.

Moreover, this Court finds that the putative class representatives will have a strong incentive to develop evidence pertaining to the entire class period because their claims rely on proof of a consistent course of conduct that extended beyond the instances of alleged fraud unique to them.

Similarly, the presence of common law issues in these complaints does not destroy typicality, even though the named plaintiffs will be called upon to represent individuals of many different states if a class is certified. Common law fraud substantially includes the 10b–5 claims, and the Court can order separate hearings to resolve the question of damages, if the need arises.

Notwithstanding certain variations in proof among members of the prospective class, the Court finds that the plaintiffs have satisfied the typicality requirement by showing that the same allegedly unlawful conduct affected all members of the prospective class.

*Adequacy of Representation*

■ Finally, before certifying the named plaintiffs as class representatives, the Court must be convinced that they will fairly and adequately protect the interests of the absent class members. Rule 23(a)(4), F.R.Civ.P. Although it is not necessary that the putative representatives' claims are identical to those of the class, the constraints of due process preclude class certification if the named plaintiffs possess other, potentially conflicting interests that would impair the vigorous prosecution of the class claims. *See Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). As set forth above, factual differences involving the sales transaction, for example, the type of promotional material used by the various account representatives and the extent to which the purchaser relied on it, will not defeat class certification. Similarly unpersuasive is the argument, also proffered above, that the plaintiffs who purchased their SPDAs early in the class period have no incentive to prove facts relevant to a purported fraud committed on a subsequent purchaser. Nor can there by any question as to the qualifications, industry and commitment of plain-

tiffs' counsel. All class members stand or fall on the issue whether material information was misrepresented or withheld from SPDA purchasers, and the Court believes that the named plaintiffs will pursue this issue vigorously.

█ The Court therefore concludes that each of the prerequisites of Rule 23(a) is satisfied. In addition, the Court finds pursuant to Rule 23(b)(3) that questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is the superior method of adjudicating this controversy fairly and adequately.

Shearson Lehman argues that arbitration, which is available upon request to each putative class plaintiff in the Shearson Lehman track of cases, is a less expensive, more efficient—and hence superior—alternative to class litigation on certain arbitrable securities claims. Even assuming for the argument that our Court of Appeals' decision in *McMahon v. Shearson/American Express, Inc.*, 788 F.2d 94, 96 (2d Cir. 1986), was wrong, *cf. Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 1240 n. 1, 84 L.Ed.2d 158 (1985), and that Shearson Lehman enjoys, as it claims, an absolute right to compel arbitration pursuant to sales agreements it entered into with its SPDA customers, this Court does not agree that class treatment is perforce inappropriate as to those claims. The fairness and completeness of class litigation, in contrast to the scattered and fairly random solution suggested by individual arbitration, persuades this Court that fraud claims such as these are often best resolved by class action. Not only are interests of consistency, efficiency and completeness served, but there is also the assurance that most if not all potential claimants will be apprised of their rights and of the named plaintiffs' comparatively inexpensive efforts to vindicate them. This Court finds it hard to believe that any class action defendant so situated would prefer separate arbitration of each of thousands of potential claims that might otherwise be decided by class action at far less transactional

cost. At least under the circumstances of this case, arbitration cannot be regarded as a serious alternative to the class action, which is so ideally suited to securities fraud claims.

The standards of Rule 23, at once fair and flexible, reaffirm the known truth that for all its pretensions, law is meant to be practical. The willingness of twenty-four sophisticated broker-dealers, advised by experienced counsel, to settle their companion actions for a record $183 million eloquently bespeaks the appropriateness of class certification among those actions that remain.

Accordingly, plaintiffs' motions for class certification in each of the four litigation tracks is granted. Each class shall be composed of those persons and entities (a) who purchased SPDAs (i) that were issued by National Investors Life Insurance Company and University Life Insurance Company of America and/or reinsured by National Investors Pension Insurance Company, Mt. Hood Pension Insurance Company, National Equity Life Insurance Company, and S & H Life Insurance Company, all of which are affiliated with Baldwin–United Corporation, and (ii) that were purchased through the respective broker-dealer defendants in each such action during the period January 1, 1979 through July 13, 1983, each in his, her or its individual capacity and any and all collective representatives, assigns, heirs, executors, administrators, custodians, predecessors or successors in interest and any other person having any legal or beneficial interest in any of such SPDAs, and (b) who continued to hold such SPDAs on July 13, 1983.

The respective representatives of the Class as to each of the above-captioned actions shall be and hereby are certified to be as follows:

1. *Linton v. Shearson Lehman/American Express, Inc., et al.*, 83 Civ. 8476 (CLB), Alfred Linton and Jerome W. Eichelsbacher;

2. *Erti v. Paine Webber Jackson & Curtis, Inc., et al.*, 83 Civ. 9085 (CLB), Vincent Erti, Joseph and Elizabeth Chupko, George and Margaret Ledney, William Neil

Aicholtz and Janet Aicholtz, and Genevieve Novicky;

3. *Woods v. W.H. Newbold's Sons & Co., Inc., et al.*, 84 Civ. 2235 (CLB), Oscar J. Woods; and

4. *Perel v. Rotan Mosle, Inc.*, 84 Civ. 8879, Steven A. Perel.

Settle a formal order on notice, which shall declare the classes as hereinbefore set forth and provide for notice and an opportunity to the members of the classes to exclude themselves.