**In re PRUDENTIAL SECURITIES INCORPORATED LIMITED PARTNERSHIPS LITIGATION.**

**MDL Docket No. 1005**
**No. M–21–67 (MP).**

United States District Court,
S.D. New York.

Aug. 29, 1995.

Melvyn I. Weiss, George A. Bauer, III, Sharon Mirksy, Milberg Weiss Bershad Hynes & Lerach, New York City, Lawrence A. Sucharow, Joel H. Bernstein, Joseph Sternberg, Diane Zilka, Goodkind Labaton Rudoff & Sucharow, L.L.P., New York City, Class Counsel Co–Chairmen

Bonnett, Fairbourn, Friedman & Balint, P.C., H. Sullivan Bunch, Phoenix, AZ, Chimicles Jacobsen & Tikellis, Nicholas Chimicles, Denise Davis Schwartzman, Haverford, PA, Duker & Barrett, William Duker, Kenneth Alberstadt, New York City, Finkelstein, Thompson & Lougran, Burton H. Finkelstein, William Butterfield, Washington, DC, Krislov and Associates, Clinton Krislov, Chicago, IL, Members of Plaintiffs' Executive Committee

Thomas J. Kavaler, Mathias E. Mone, Cahill Gordon & Reindel, New York City, for the Prudential Defendants.

## *OPINION*

MILTON POLLACK, Senior District Judge:

Plaintiffs, pursuant to Rule 23 of the Federal Rules of Civil Procedure, have moved for: certification of a settlement class; preliminary approval of the proposed class action settlement with certain defendants; and approval of the form and manner of notice to be provided to Class Members.

### PRELIMINARY

After several years of vigorous litigation in this multi-district action and its constituent cases (as well as related state court actions), and months of intense negotiations, plaintiffs have reached a settlement with the PSI Settling Defendants.[1] If finally approved by the

---

1. The PSI Settling Defendants are: Prudential Securities Incorporated ("PSI"); Prudential In-

Court, the settlement will resolve a large portion of the litigation arising out of Prudential Securities Incorporated's ("PSI") marketing and sale of high-risk limited partnership interests to the investing public. The Stipulation and Agreement of Partial Compromise and Settlement ("Stipulation"), dated August 9, 1995, provides recovery of $110,000,000 for a Class of investors who have not previously resolved their claims against the PSI Settling Defendants. The settlement amount, less costs and attorneys' fees approved by the Court, will be distributed to Class Members in accordance with a Plan of Allocation.

The $110 million settlement represents an outstanding achievement for the benefit of the Class. For the reasons addressed below, the Court will: (1) certify the settlement class consented to by the interested parties; (2) grant preliminary approval of the settlement; (3) schedule a fairness hearing; (4) approve of the form and content of notice to be provided to absent Class Members; and (5) direct that such notice be provided to absent Class Members in the manner set forth in the proposed order.

## BACKGROUND

The allegations of the plaintiffs set forth the alleged misconduct of PSI and its representatives on which these suits were based, as mentioned hereafter in this background statement.

On April 14, 1994, the Judicial Panel on Multidistrict Litigation entered an order transferring to this Court several class action cases, arising out of PSI's questioned marketing and sale of limited partnership units during the 1980s. On May 19, 1994, this Court entered Order No. 1 (subsequently superseded by Order No. 2 entered June 27, 1994), which consolidated the constituent actions and authorized plaintiffs to serve a consolidated complaint. On June 8, 1994, plaintiffs served their detailed, three volume, Consolidated Complaint, which asserted claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, among other claims.

As alleged in the Consolidated Complaint, approximately 700 limited partnerships were organized, marketed and sold as part of a massive and continuous plan designed to induce investments. PSI persuaded investors into buying partnership units by describing them as "risk-free" investments. For many years, PSI represented that their investment principal remained safe and secure when, in fact, it was allegedly eroded seriously by fees and charges and distributions characterized as "income". As charged by plaintiffs, the standardized sales approach used by PSI allegedly misrepresented the nature of the highly speculative partnerships and the considerable risks associated with investing in them. The reported performance of partnerships was allegedly designed to make illiquid and uneconomical partnerships appear profitable, so as to induce continuous investment in related partnerships and to cover up initial alleged misstatements.

While investors incurred substantial losses from the moment they purchased these partnerships, the plan produced tremendous amounts of commissions, management fees and profits for the PSI Settling Defendants as well as the non-settling parties, such as sponsors and general partners of the limited partnerships, which carried the misrepresentations forward.

Following the commencement of a number of federal and state actions by plaintiffs here and other investors, the Securities and Exchange Commission ("SEC") also filed a complaint against PSI on October 21, 1993. The SEC complaint was accompanied by a final order effectuating a settlement between the SEC (and most state securities regulators) and PSI providing for, among other things, an unlimited compensation fund (the "SEC

surance Company of America, Prudential Securities Group, Inc., Prudential–Bache Capital Funding, Inc., Prudential–Bache Agriculture Inc., Prudential–Bache Energy Production, Inc., Prudential–Bache Leasing, Inc., Prudential–Bache Minerals, Inc., Prudential Realty Partners, Inc., R & D Funding Corp., Graham Resources, Inc., Gra-

ham Energy, Ltd., Graham Securities Corp., Graham Royalty, Ltd., Prudential–Bache Properties, Inc., George Ball, Robert Sherman, James Darr, William E. Pittman, Jr., James M. Kelso, Brian J. Martin, Frank W. Giordano, Joseph H. Quinn, Joe W. DeFur, Paul J. Proscia, Anthony J. Hertl, Frank Saraceno and John J. Graham.

Fund") for investors (who chose to participate) relative to the same partnerships at issue in this case. On October 27, 1994, the United States Attorney for the Southern District of New York announced that PSI had acknowledged criminal wrongdoing in connection with the sale of units in one of the groups of limited partnerships involved in this action, the Prudential–Bache Energy Income Limited Partnerships ("Energy Income").[2]

The settlement primarily would benefit those Class Members who, for various reasons, did not participate in the SEC Fund, "opted out" of previous class actions or did not otherwise bring an individual legal proceeding. It follows an intensive and multifaceted investigation by plaintiffs' counsel, which included: analysis of enormous quantities of documents produced by the defendants; interviews and the procurement of affidavits from former employees of several defendants; and significant depositions of personnel of one of the largest sponsor-defendants, the Polaris Organization. In addition, plaintiffs' counsel had access to relevant discovery, including important deposition and trial testimony, obtained in several related actions and arbitrations against the PSI Settling Defendants and some of the sponsoring defendants. On August 9, 1995, after intensive negotiations facilitated by the Court, plaintiffs and the PSI Settling Defendants entered into the Stipulation to Settle the PSI Settling Defendants' portion of this case for $110,000,000.

## THE SETTLEMENT

The Stipulation provides that, subject to this Court's approval pursuant to Rule 23(e), the PSI Settling Defendants will pay $110,000,000 for the benefit of Class Members.[3] The claims of all Class Members (who do not otherwise exclude themselves from the Class)

relating to the marketing, sale and ownership of units in the partnerships, as well as the management or operation of the partnerships, would be released and dismissed on the merits and with prejudice as against the PSI Settling Defendants and Released Parties.[4] This litigation will continue against the Non–Settling Defendants[5] and the PSI Settling Defendants have agreed with plaintiffs to cooperate in continuing discovery in this action as it relates to those defendants. For purposes of effectuating this settlement, the PSI Settling Defendants have consented to certification of a Class pursuant to Rule 23(b)(3) for settlement purposes.

The parties have also submitted to the Court a Plan of Allocation for purposes of equitably distributing the settlement proceeds to Class Members. In general, the Plan of Allocation assigns a weight to the recognized loss for a partnership and utilizes several factors to arrive at a mathematical representation of the relative strengths and weaknesses of the claims of Class Members who invested in that partnership, as compared with other partnerships. The factors to be considered include: (1) whether PSI or an affiliate was a general partner of the partnership; (2) whether PSI was the principal marketer of the partnership; (3) whether the partnership was initially sold through a public or private offering; and (4) the years during which the partnership was sold. It is anticipated that the entire net settlement fund would be distributed among approved claimants.

## DISCUSSION

The proposed settlement has been reached on behalf of a class defined as all persons or entities, acting in their own capacity or in a representative capacity, who either:

(a) purchased units in any partnerships or other entities listed on Schedule 1 [to

---

2. While Energy Income is among the partnerships at issue in this case, very few Energy Income investors remain in the class as a consequence of: (a) the resolution of *In re Prudential–Bache Energy Income Sec. Lit.*, MDL 888 in 1993; (b) numerous individual actions and arbitration proceedings brought by Energy Income investors, and (c) resolution of claims by Energy Income investors in the SEC Fund.

3. One million dollars has been paid into the Notice Fund and the $109,000,000 balance will be paid on or about September 9, 1995 into CRIS.

4. *See* Stipulation ¶ 20.

5. *See* Stipulation ¶ 9.

the Stipulation] between January 1, 1980 and June 8, 1994 (the "Settlement Class Period"), on their initial offerings or in the secondary market, or

 (b) purchased from or through PSI on their initial offerings or in the secondary market, Units in any of the partnerships or other entities listed on Schedule 2 [to the Stipulation] during the Settlement Class Period.

The Class definition excludes persons or entities whose claims have been released, the partnerships, defendants and the individual defendants' immediate families. Also excluded are individuals who have signed submission agreements in the SEC Fund, which agreements provide that the SEC Fund and its expedited arbitration procedures will be the sole forum for resolution of those individuals' claims.

 ■ The settlement class device has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants. In fact, "tentative or temporary settlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under the scrutiny of the trial judge." *In re Beef Indust. Antitrust Lit.,* 607 F.2d 167, 174 (5th Cir.1979), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405 (1981). In *Weinberger v. Kendrick,* 698 F.2d 61 (2d Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983), the Second Circuit observed that

> [t]he hallmark of Rule 23 is flexibility.... Temporary settlement classes have proved to be quite useful in resolving major class action disputes. While their use may still be controversial, most Courts have recognized their utility and have authorized the parties to compromise their differences, including class action issues through this means.

698 F.2d at 72–73. *See also Malchman v. Davis,* 706 F.2d 426, 433–34 (2d Cir.1983); *In re Baldwin–United Corp.,* 105 F.R.D. 475, 478–481 (S.D.N.Y.1984).

 In *In re Drexel Burnham Lambert Group, Inc.,* 130 B.R. 910 (S.D.N.Y.1991), this Court "certified temporarily, and for settlement purposes only, a mandatory non-opt-out class of all securities litigation claimants ... and two mandatory non-opt-out subclasses". 130 B.R. at 912. The Court subsequently certified the classes in conjunction with approval of the settlement, analyzing the pertinent requirements of Rule 23. 130 B.R. at 918–924. The Second Circuit later affirmed the Court's certification of a mandatory class and the approval of the settlement at issue. *See In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 290–292 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993).[6]

 In this case, a settlement class is appropriate because there is no likelihood of abuse, and the settlement is fair, reasonable and has been arrived at pursuant to informed arm's-length negotiations under the supervision of the Court. After several cases arising out of PSI's marketing and sale of limited partnerships were transferred to this Court by the Judicial Panel on Multidistrict Litigation, the Court entered Order No. 1 on May 19, 1994 (superseded by Order No. 2 on June 27, 1994), which designated an Executive Committee of plaintiffs' counsel. The Court itself supervised the litigation between the parties, was intimately familiar with the complex legal issues facing plaintiffs and defendants and participated in settlement discussions between the parties.

 In addition, a settlement class in complex litigation (such as this case), actually enhances absent class members' opt out rights because the right to exclusion is provided simultaneously with the opportunity to accept or reject the terms of a proposed settlement. Unlike a class notice in a case that will be litigated (and which class members must decide to opt out or remain in the class without any indication as to the case's prospects), the description of the Plan of Alloca-

---

**6.** The Third Circuit's recent conclusion that the district court must "assure that settlement classes meet *all* of the requirements of 23(a) and (b)", *In re General Motors Corporation Pick–Up*

*Truck Fuel Tank Products Liability Lit.,* 55 F.3d 768, 797 n. 19 (3d Cir.1995) (emphasis in original), merely reflects the practice already employed by this Court.

tion in the Notice will allow Class Members to have some idea of what he or she sacrifices by opting out. *See Baldwin,* 105 F.R.D. at 481 (absent class members "will have a more concrete basis for deciding whether to opt out of a plaintiffs' class").

In any event, each requirement for a Rule 23(b)(3) class is satisfied and certification of a class—be it for settlement or otherwise—is appropriate.

### A. Standards For Class Certification.

 The Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation, *see Korn v. Franchard Corp.,* 456 F.2d 1206, 1208–09 (2d Cir.1972); *Green v. Wolf Corp.,* 406 F.2d 291, 298, 301 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969), and has explicitly noted its preference for class certification in securities cases and the importance of certification for small securities holders located throughout the country.[7] *See Escott v. Barchris Constr. Corp.,* 340 F.2d 731, 733 (2d Cir.), *cert. denied sub nom. Drexel & Co. v. Hall,* 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63 (1965); *Maywalt v. Parker & Parsley Petroleum Co.,* 147 F.R.D. 51, 54 (S.D.N.Y.1993). Class actions are also a desirable method for assertion of RICO claims based on predicate acts of securities fraud that might otherwise be time-barred from direct assertion. *See Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 925 (3d Cir.1992).

The presentation on this motion by the plaintiffs, which they say will be further enhanced in connection with final consideration of the proposed settlement, amply shows that class certification is appropriate. *See Maywalt v. Parker & Parsley Petroleum Co.,* 147 F.R.D. at 54.

### B. Rule 23(a)(1) is Satisfied Because The Class is So Numerous That Joinder of All Members is Impracticable.

 Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. *See Maywalt v. Parker & Parsley Petroleum Co.,* 147 F.R.D. 51, 54 (S.D.N.Y.1993). In this case, the Class consists of approximately 100,000 geographically dispersed members, rendering joinder impracticable. At the fairness hearing, the Court will be advised of the precise number of Class Members to whom notice was provided. Rule 23(a)(1) is plainly satisfied.

### C. There Are Predominant Questions Of Law Or Fact Common To Each Class Member.

 Rule 23(a)(2) requires the existence of questions of law or fact common to the class.[8] Rule 23(b)(3) requires that common questions predominate over individual questions. Both provisions are satisfied here.

Commonality under Rule 23(a)(2) and Rule 23(b)(3) is established if all class members are in a substantially similar factual situation and the questions of law raised by plaintiffs are applicable to each class member. "Courts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual questions." *Dura–Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 93 (S.D.N.Y.1981). *See also Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193, 199 (S.D.N.Y.1992); *In re Baldwin–United Corp. Lit.,* 122 F.R.D. 424, 426 (S.D.N.Y.1986).

The Consolidated Complaint evidences that common questions predominate. The partnerships were organized as part of a common course of misconduct marketed and sold to plaintiffs and the Class through standardized sales materials, which were generated allegedly at the management level and passed on to the PSI sales force. PSI, through its standardized sales approach, allegedly misrepresented the nature of the

---

7. In this case it has been estimated that 350,000 investors purchased approximately $8 billion in limited partnership units. This averages approximately $23,000 per investor. Out of pocket losses, computed by deducting distributions, tax benefits and current residual values would, for many Class Members, would be much lower.

8. Rule 23(a)(2) is generally considered a " 'low hurdle' easily surmounted." *Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181, 185 (N.D.Ill.1992).

highly speculative partnerships and the risks associated with investing. PSI incorrectly described the investment objectives as: (1) the preservation of principal; (2) the generation of substantial above-market income; and (3) the return of capital with appreciation after a defined period of time (generally five to seven years). The reported performance of prior similar partnerships was made to make these illiquid and uneconomical partnerships appear profitable. This enabled the notion of "successful" performance of its earlier partnerships to appear as indicia of the safety and security of all of the partnerships. The actual performance of the partnerships in which they had invested did not measure up to the appearances. In monthly account statements, PSI reported the investments as retaining their initial investment value. The actual value, *if any,* was far less.

While plaintiffs and most Class Members had direct dealings with PSI sales personnel, the substance of those transactions was governed by PSI's course of conduct, adopted at the management level of PSI. That course of conduct and the content of the sales materials did not disclose the investors' losses and aided the misconduct alleged. In *In re Baldwin–United Corp. Lit.,* 122 F.R.D. 424 (S.D.N.Y.1986), Judge Brieant addressed commonality based on similar allegations:

> The gravamen of plaintiffs' complaints is that the defendants, in connection with their business of analyzing investment opportunities and providing financial services to clients, *each engaged in a similar unified course of conduct to promote and sell Baldwin–United's SPDAs to the public without disclosing that the issuer was experiencing financial and regulatory difficulties.* Plaintiffs contend that the defendants, *at the corporate, policy making lev-*

*el,* knew or recklessly disregarded evidence of Baldwin–United's precarious financial condition and that *they elected to implement or maintain standardized marketing practices that concealed the true investment risks of the SPDAs.* Those practices, plaintiffs allege, emphasized the safety, liquidity and promising investment aspects of the SPDAs even though information available to the defendants foretold Baldwin–United's collapse.

122 F.R.D. at 426 (emphasis added).

In this case, because the central and predominant focus of this litigation is PSI's improper course of conduct in organizing and operating uneconomical limited partnerships and marketing and selling investments in those partnerships—conduct that has attracted the attention of the SEC, securities regulators from all fifty states and the United States Attorney—the relevant questions in this case are susceptible to class-wide proof. Each Class member is similarly situated with respect to the underlying orchestrations by PSI, and "it would be folly to force each [investor] to prove the nucleus of the alleged fraud again and again." *In re American Continental Corp./Lincoln Savings & Loan Sec. Lit.,* 140 F.R.D. 425, 431 (D.Ariz.1992).[9] The predominance requirement of Rule 23(b)(3) is satisfied.

### D. Rule 23(a)(3) is Satisfied as Plaintiffs' Claims are Typical of Claims of the Class.

Rule 23(a)(3) requires that the claims asserted by the plaintiffs be typical of those claims of each member of the class. Plaintiffs' claims are typical if they arise from the same event or practice or course of conduct that gives rise to the claims of other

9. In *Baldwin,* Judge Brieant rejected defendants' contention that oral representations by broker-dealers made class treatment inappropriate, stating that "the wrongful conduct alleged by plaintiffs occurred at the management level, if it did, and manifested itself in the defendants' course of promoting and selling the SPDAs. As a result, the relevant questions are readily susceptible to class-wide proof." 122 F.R.D. at 427. *See also In re American Continental Corp./Lincoln Savings & Loan Sec. Lit.,* 140 F.R.D. 425, 430 (D.Ariz. 1992) ("The center of gravity of the fraud tran-

scends the specific details of oral communications."). It is well settled that oral representations will not preclude certification of a class that is otherwise appropriate. *See Shankroff v. Advest, Inc.,* 112 F.R.D. 190, 193 (S.D.N.Y.1986) ("Since plaintiff's allegations focus on overall managerial decisions which affected all Advest clients, questions of oral representations or individual reliance do not overwhelm the issues common to the class."); *In re Energy Sys. Equip. Leasing Sec. Lit.,* 642 F.Supp. 718, 750 (E.D.N.Y. 1986); *In re Resource Exploration, Inc.,* 1984 WL 3240 (S.D.N.Y. Oct. 15, 1984).

class members and his or her claims are based on the same legal theory. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992); *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 200 (S.D.N.Y.1992); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir.1992). The typicality requirement of Rule 23(a)(3) is liberally construed; and "typical" does not mean "identical." *Trief,* 144 F.R.D. at 200. The possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact. *In re Bally Mfg. Sec. Corp. Lit.*, 141 F.R.D. 262, 268 (N.D.Ill.1992), *aff'd on other grounds,* 2 F.3d 1456 (7th Cir.1993).

■ Here, plaintiffs are in the same position as absent Class Members, regardless of the specific PSI-sponsored partnership in which they invested, because of the uniform course of improper conduct and standardized sales approach applied by defendants. The typicality requirement of Rule 23(a)(3) does not require that named plaintiffs invest in all related partnerships that are the subject of the action. *See Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 56–57 (S.D.N.Y.1993) (class certified even though representative plaintiffs invested in only three of five limited partnerships at issue); *Longden v. Sunderman*, 123 F.R.D. 547 (N.D.Tex.1988) (class certified on behalf of investors in 121 limited partnerships although the six representatives invested in on seven of them). *See also Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912 (3d Cir. 1992); *Tedesco v. Mishkin,* 689 F.Supp. 1327, 1335–36 (S.D.N.Y.1988); *Handwerger v. Ginsberg,* 19 Fed.R.Serv.2d (Callaghan) 1051, 1975 WL 343 (S.D.N.Y.1975), *app. denied,* 519 F.2d 1339 (2d Cir.1975); *Eisenberg v. Gagnon,* 766 F.2d 770 (3d Cir.1985), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985).

"As long as plaintiffs assert, as they do here, that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality." *In re Amerifirst Sec. Lit.*, 139 F.R.D. 423, 429 (S.D.Fla.1991). The alle-gations in the Consolidated Complaint, which are accepted as true for purposes of class certification, establish that plaintiffs' claims, including their reliance on the securities' marketability and the integrity of the regulatory process, are typical of the claims of all Class Members in satisfaction of Rule 23(a)(3). *See ACC/Lincoln,* 140 F.R.D. at 433–434.

### E. Plaintiffs Would Fairly and Adequately Protect the Interests of the Class.

■ The "adequacy of representation" requirement of Rule 23(a)(4) is comprised of two factors: (1) the representative party's attorney must be qualified, experienced and generally able to conduct the litigation; and (2) the plaintiff's interests must not be antagonistic to those of the remainder of the Class. *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992); *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 201 (S.D.N.Y.1992). Both elements are present in this case.

Counsel for plaintiffs have successfully conducted numerous class actions, including class actions under the federal securities laws and RICO, in this Court and in federal district courts throughout the United States. *See, e.g., In re Drexel Burnham Lambert Group, Inc.*, 130 B.R. 910, 920 (S.D.N.Y. 1991). In litigating this case, with the massive number of documents involved, plaintiffs' counsel have expended a large quantity of their own funds on one of the most innovative and sophisticated "high-tech" document management/litigation support systems available. Further, during the conduct of the litigation in this case, the Court has observed first-hand the calibre of plaintiffs' counsel and is able to judge their adequacy in representing the Class. Finally, plaintiffs' interests are aligned with the interests of other Class Members. Plaintiffs and their counsel are, therefore, adequate representatives of the Class in satisfaction of Rule 23(a)(4).

### F. A Class Action Is Superior To Other Available Methods of Adjudication.

■ Finally, consideration of judicial economy and sheer access to justice underscores the superiority of the class action in

this case. Classes have been certified where potential management problems were far more complex. *See, e.g., In re Domestic Air Transportation Antitrust Lit.,* 137 F.R.D. 677, 694 (N.D.Ga.1991) (certified class consisting of all domestic airline passengers since January 1, 1988 on several major carriers, *i.e.* at least 12.5 million people).

Accordingly, for the reasons addressed above, the Court will grant the request to send notice of the proposed settlement to absent Class Members. At the fairness hearing, plaintiffs aver that they will present additional evidence, if necessary, to establish the propriety of class certification.

## THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL.

It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *In re Michael Milken & Assoc. Sec. Lit.,* 150 F.R.D. 46, 53 (S.D.N.Y.1993); *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 408, 121 L.Ed.2d 333 (1992); *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir.1977). The settlement is now before the Court for purposes of preliminary approval of the settlement as possibly fair, reasonable and adequate. The Court's function now is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Board of School Directors of the City of Milwaukee,* 616 F.2d 305, 314 (7th Cir.1980) (citation omitted).

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and

evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litigation, Third* § 30.41 at 237 (1995). *See In re Baldwin–United Corp.,* 105 F.R.D. 475, 482 (S.D.N.Y. 1984) ("Upon consideration of the proposed settlement presented to this Court for preliminary approval, the Court finds that it is at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard."); *Armstrong,* 616 F.2d at 314 (The purpose of the prenotification hearing is "to determine whether the proposed settlement is 'within the range of possible approval.'").[10]

■ Approval of the settlement, following a fairness hearing, is a matter for the exercise of the trial court's discretion, which when exercised is done in recognition of the policy encouraging settlement of disputed claims. *In re Michael Milken & Assoc. Sec. Lit.,* 150 F.R.D. at 53. *See In re Warner Communications Sec. Lit.,* 798 F.2d 35, 37 (2d Cir.1986) ("It is not the district judge's job to dictate the terms of a class settlement."). Most of the relevant factors to be considered are: "(1) the complexity, expense and likely duration of the litigation ...; (2) the reaction of the class to the settlement ...; (3) the stage of the proceedings and the amount of discovery completed ...; (4) the risks of establishing liability ...; (5) the risks of establishing damages ...; (6) the risks of maintaining the class through the trial ...; (7) the ability of the defendants to withstand a greater judgment ...; (8) the range of reasonableness of the settlement fund in light of the best possible recovery ...; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation...." *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir.1974); *In re Michael Milken & Assoc. Sec. Lit.,* 150 F.R.D. at 64; *Chatelain v. Prudential–Bache Securities, Inc.,* 805 F.Supp. 209, 213 (S.D.N.Y. 1992).

---

**10.** *See also In re Mid–Atlantic Toyota Antitrust Lit.,* 564 F.Supp. 1379, 1383–85 (D.Md.1983); *In re First Commodity Corporation of Boston Cus-* tomer *Accounts Lit.,* 119 F.R.D. 301, 313–14 (D.Mass.1987).

▉ Here, the settling parties have reached a settlement that appears on the surface as extremely beneficial to the Class. The financial recovery is among the largest securities class action settlements ever achieved. The settlement allows Class Members who were excluded from, or did not participate in, the SEC Fund or the legal proceedings against PSI, to obtain a recovery. Those investors who did participate in the SEC Fund, or whose claims against PSI have otherwise been released or adjudicated, are not included in the Class, thus preserving the settlement fund for those investors who have not otherwise obtained or attempted to obtain a recovery. Most Class Members' claims under the federal securities laws are time-barred, *see Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), and the risk and expense of pursuing individual claims is often not practicable, especially when more complex theories such as RICO are required.[11]

Moreover, the risks involved with further litigation are significant, as many cases arising out of the same underlying misconduct have been dismissed or otherwise resolved against investors.[12] Instead of the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery for the Class. In the circumstances of such a case as this, it may be preferable "to take the bird in the hand instead of the prospective flock in the bush." *Oppenlander v. Standard Oil Co.,* 64 F.R.D. 597, 624 (D.Colo.1974). The outstanding result offered by the settlement appears to outweigh the various risks associated with continued litigation.

In any event, the Court will be in a position to fully evaluate the *Grinnell* factors at the fairness hearing, where it can consider the submissions by proponents and potential opponents of the settlement and the reaction of the Class Members. At this stage of the proceeding, the Court need only find that the proposed settlement fits "within the range of possible approval," *Armstrong,* 616 F.2d at 314, a test that the settlement here easily satisfies.

## THE FORM AND MANNER OF NOTICE TO THE CLASS.

The proposed Notice (included as Exhibit 1 to Exhibit A of the to the Stipulation) has been drafted by the settling parties to provide Class Members with a fair understanding of the actions, the parties and the nature of the settlement. The Notice also clearly details which investors are eligible to participate in the settlement and the rights and obligations that accompany such participation. *See In re Michael Milken & Assoc. Sec. Lit.,* 150 F.R.D. at 60 (Notice must be reasonably calculated to apprise the class of the pending action and to afford class members an opportunity to object); *O'Brien v. National Property Analysts Partners,* 739 F.Supp. 896, 901 (S.N.D.Y.1990) (The notice need only contain a "very general description of the proposed settlement, including a summary of the monetary or other benefits that the class would receive and an estimation of attorneys' fees and other expenses.") (citation omitted).

The settling parties propose sending a copy of the Notice to each Class Member, whose address can be reasonably located, by first-class mail, which is the best notice practicable. *See Zimmer Paper Products, Inc. v. Berger & Montague, P.C.,* 758 F.2d 86, 91 (3d Cir.1985), *cert. denied,* 474 U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 227 (1985). In addition, the settling parties propose to give notice by publication of a summary notice on two separate occasions in national editions of *The Wall Street Journal, The New York Times* and *U.S.A. Today.* It is believed that such a published summary notice will have the broadest reach to inform those members

---

11. Indeed, probably because of the statute of limitations, the Consolidated Complaint contains no direct claims for violation of the federal securities laws.

12. *See, e.g., Harner v. Prudential–Bache Securities, Inc.,* 1994 WL 494871 (6th Cir.1994); *Cara-*

*luzzi v. Prudential Securities, Inc.,* 824 F.Supp. 1206 (N.D.Ill.1993); *Weisl v. Polaris Holding Co.,* No. 29239/92 (N.Y.Sup.Ct. June 29, 1993); *Flanagan v. R & D Funding Corp.,* No. 13425/92 (N.Y.Sup.Ct. July 1, 1994).

of the Class who, for some reason, may not receive the mailed Notice.

## CONCLUSION

For the reasons stated, the Court will and does: (1) grant temporary class certification; (2) grant preliminary approval of the settlement; (3) schedule a fairness hearing; (4) approve of the form and content of notice to be provided to absent Class Members; and (5) direct that such notice be provided to absent Class Members.