## IN RE PAINEWEBBER LIMITED PARTNERSHIP LITIGATION

No. 94 Civ. 8547 (SHS).

United States District Court, S.D. New York.

Feb. 26, 1996.

**ORDER**

STEIN, District Judge.

Robert and Vera Jacobson, members of the plaintiff class in this action, have moved to intervene, to be appointed representatives of a subclass consisting solely of investors in Pegasus Aircraft Partners, L.P. ("Pegasus I") and Pegasus Aircraft Partners II, L.P. ("Pegasus II"), to have their counsel appointed as lead counsel on behalf of that subclass, and to have their counsel appointed to plaintiffs' Executive Committee. The representatives of the plaintiff class and PaineWebber both oppose the motion. For the following reasons, the motion is denied.

The plaintiff class alleges a number of illegalities in connection with PaineWebber's syndication of 70 public limited partnerships ("PLPs") and real estate investment trusts ("REITs") between 1980 and 1992, including Pegasus I and Pegasus II. (*See* Corrected First Cons.Am. Class Action Compl. ¶¶ 9–22) The named plaintiffs invested in approximately 20 of those entities, although the class includes investors in all 70 entities. (*See* Affidavit of Lewis S. Sandler, sworn to on November 20, 1995, at ¶ 3; Stipulation and Order Regarding Class Certification, dated May 30, 1996, at ¶ 1, sched. A; Compl. ¶¶ 27–44.) Six named plaintiffs invested in Pegasus II and none in Pegasus I. (*See* Compl. ¶¶ 28–31, 33, 38, 41.)

Of the 70 entities, approximately 30 relate to real estate, 29 relate to oil and gas, three relate to technology development, two relate to transactional financing, two relate to equipment leasing, two—Pegasus I and II—relate to aircraft leasing, one relates to mass media, and one relates to commodities futures trading. (*See* Sandler Aff. ¶ 4 & nn. 1–7.)

The Jacobson's seek to intervene in this action pursuant to Fed.R.Civ.P. 23(d)(2) and 24, and to create a subclass pursuant to Fed.R.Civ.P. 23(c)(4)(B). Intervention as of right is appropriate where, *inter alia,* the current class representatives do not adequately represent the proposed intervenors' interests, *see Diduck v. Kaszycki & Sons Contractors, Inc.,* 149 F.R.D. 55, 57–58 (S.D.N.Y.1993), such as where there exists a conflict of interest, as the Jacobsons claim.

■ Similarly, subclasses may be created when there are conflicts of interest among

class members. *See, e.g., In re Joint E. and S. Dist. Asbestos Litigation,* 982 F.2d 721, 739 (2d Cir.1992). Thus, the gravamen of both the Jacobsons' motion to intervene as of right and their motion for the creation of a subclass is the same: inherent conflicts among investors in the different entities prevent the current named plaintiffs and their attorneys from adequately representing the Jacobsons and other Pegasus I and II investors.

▇ Since none of the named plaintiffs invested in Pegasus I, the Jacobsons contend, none can adequately represent those who invested in that entity. Further, they assert, of those who invested in Pegasus II, all but two also invested in other entities, and have a conflict of interest between their representation of "pure" Pegasus investors, such as the Jacobsons, and investors in the other entities. According to the Jacobsons, the other two—who invested only in Pegasus II—are conflicted because, as class representatives, they have committed to represent investors in other entities.

As support for the existence of that conflict, the Jacobsons allege that Pegasus I and II interests were marketed pursuant to a unique, uniform, scripted "sales pitch" which involved misrepresentations not involved in the marketing of most of the other entities. The sales pitch was uniform because it was orchestrated by PaineWebber's Direct Investment Department. The Jacobsons claim that "[t]he uniform sales pitch included standardized promotional literature, standardized question-and-answer scripts, standardized articles in Pacesetter, and road shows which were scripted and monitored by [the] Direct Investment Department to ensure uniformity." (Jacobsons' Reply Mem. at 19.) They claim that interests in only three other PLPs and REITs were marketed pursuant to the same sales pitch. Because the sales pitch for interests in these five entities was uniform, they argue, it will be easier for them to establish that they relied on misrepresentations, while investors in the other 65 entities must prove that the *particular* pitch used on them contained misrepresentations.

However, the class complaint alleges, in numerous places, that PaineWebber defraud-ed investors in *all* the applicable entities pursuant to a uniform pattern of conduct, that sales materials were standardized, and that the sales force was expected to reiterate to its customers the information in the sales materials in a substantially identical format. (Compl.¶¶ 12, 116, 118, 123, 124, 126, 131, 136, 140.) It also alleges that PaineWebber had a practice of encouraging its brokers to sell shares in *all* of the applicable entities, alleged to be high-risk, to investors desiring a safe investment. (Compl.¶¶ 14, 16.)

The Jacobsons offer nothing from the discovery that has thus far transpired to demonstrate to the Court that the sales pitch utilized to sell the Pegasus I and II shares were materially different from that used to sell shares of the other entities. The deposition excerpts offered by the Jacobsons are unavailing in this regard.

When taken to its logical conclusion, the Jacobsons' contention is that any variation among the approaches used to sell shares in each PaineWebber entity renders the investors in each entity so unlike the investors in any other entity that 70 subclasses are necessary, one for the investors in each PLP or REIT. Such an approach is both unnecessary and would render this litigation unmanageable. While investors in different entities may have had slightly different sales pitches thrown their way, all emanated from the same source, *i.e.,* PaineWebber. That entity is alleged to have allowed and encouraged false and misleading statements and omissions to be made pursuant to a generalized, standardized plan—the particular statements or omissions made in any one instance are not relevant at this juncture of the litigation. *Cf. In re Prudential Sec. Inc. Ltd. Partnerships Litigation,* 163 F.R.D. 200, 206–07 (S.D.N.Y.1995) (granting class certification)

The Jacobsons' second argument is that many class members are subject to a statute of limitations defense applicable to their Rule 10b–5 claims, and that the Court will eventually determine that many of those claims are time-barred. By contrast, the Jacobsons have not asserted 10b–5 claims and therefore do not have to address any such alleged limitations period. The Jacobsons fear that the existing class representatives' preoccupa-

tion with these defenses unique to them renders those representatives inadequate and atypical. Relatedly, the Jacobsons argue that, because in their proposed intervenor complaint they allege breach of contract claims and a claim under N.Y. Gen. Bus. Law § 349, their claims differ from the class complaint significantly enough to warrant creation of a subclass.

However, the mere fact that a proposed intervenor would assert different claims from those asserted by the named plaintiffs does not render the latter inadequate to represent the former, nor does the fact that the named plaintiffs may be subject to defenses that the proposed intervenor is not. *Cf. In re Energy Sys. Equip. Leasing Sec. Litigation*, 642 F.Supp. 718, 749–50 (E.D.N.Y.1986) (granting class certification)

Finally, the Jacobsons contend that the fact that the Pegasus entities involve aircraft is relevant because a critical issue at trial will be why each entity sustained losses. This will involve different evidence, and different expert witnesses, for each type of business involved. This presents a risk, they say, that Pegasus investors' interests will be compromised in favor of other investors.

However, there is no evidence that the interests of Pegasus investors are being compromised in this respect. To the contrary, the Court was informed at the argument of this motion that an expert witness has been retained by class counsel solely to address the claims regarding the Pegasus entities. (Tr. at 23–24.)

In addition, the Jacobsons retain the right to be heard with regard to the acceptance and allocation of any proposed settlement. *See* Fed.R.Civ.P. 23(e). Thus, they have failed to substantiate their claims that the current class representatives are inadequate to protect the interests of Pegasus I and II investors.

■ The Jacobsons also move for permissive intervention pursuant to Fed.R.Civ.P. 24(b). The Court has wide discretion in ruling on such a motion. *See New York News, Inc. v. Kheel*, 972 F.2d 482, 487 (2d Cir.1992). The Jacobsons have not presented any arguments other than those discussed and reject-ed above with regard to the supposed inadequacy of the named plaintiffs. In addition, absent good reason to do so, the Court is disinclined to add to the already large number of attorneys handling this matter, lest that number become unwieldy and excessive. Therefore, the Court declines to permit the Jacobsons to intervene pursuant to Fed. R.Civ.P. 24(b).

### *Conclusion*

For the foregoing reasons, the Jacobsons' motion to intervene, to be appointed representatives of a Pegasus subclass, to have their counsel appointed as lead counsel on behalf of that subclass, and to have their counsel appointed to plaintiffs' Executive Committee is denied.